Chief Judge Ful».
This appeal presents a question as to the admissibility of statements obtained from an individual while being interrogated by a police officer at gun point.
During an attempt to hold up a liquor store in Inwood, Nassau County, on the night of November 15, 1965, the clerk on duty was assaulted. Shortly thereafter, a police officer arrived at the store and was given a description of the assailant and a second person who, the clerk believed, was an accomplice. Some 10 minutes later, while driving in his patrol car, the officer observed the defendant and another man, later identified as Ellery Jackson, walking together on a street in Far Rockaway, not far from the site of the attempted robbery. They fitted the *120 descriptions which he had been given and he called them over to his car. As they approached, he drew his gun and, pointing it in their direction, proceeded to interrogate them concerning their whereabouts and activities that evening. The officer acknowledged, upon the trial, that the defendant was not free to leave and that, had he made any attempt to do so, he would have restrained him. In response to questions put to him by the officer, the defendant denied that he had been in Inwood, asserting that he had been with a friend in Far Rockaway. The officer then told the defendant and Jackson that a robbery had been attempted in Inwood, that they fitted the description of the men involved and that he was arresting them for the crime. [1] The defendant and Jackson were thereafter indicted for the crimes of attempted robbery in the first degree, attempted grand larceny, assault and possession of a dangerous weapon. Upon the opening of the trial, the judge conducted a hearing—in the absence of the jury—to determine the admissibility of the defendant’s statement. After the police officer, called by the People, testified concerning his taking of the statement, counsel for the defendant moved to suppress it on the ground that it was obtained from him after he had been taken into ‘ ‘ custody ’ ’ without warning him of his rights as required by Miranda v. Arizona (384 U. S. 436) J The motion was denied, and the case proceeded to trial.
According to the night clerk, the defendant was a regular customer and was in the store at the time of the attempted .robbery. He testified that the defendant had ordered a bottle of whiskey and that, while he was removing it from the shelf, Jackson, who was also in the store, hit him on the head with a piece of wood. He fell to the floor, said the witness, drew a gun which he had in his pocket and fired it at Jackson, whereupon both Jackson and the defendant fled the premises. The police officer, who had previously testified at the hearing, was then called to the stand to state that the defendant had denied that he had been in the store. This evidence was undoubtedly adduced not only to establish a false alibi, reflecting consciousness of guilt, but also to impeach the defendant’s testimony upon the *121 trial if he later elected to take the stand. The defendant did choose to do so and admitted that he had been on the premises during the time the crime was committed but denied any participation in it; it was his claim that he ran out of the store and after Jackson only to tell him that, “if anything come up I didn’t want to be involved in it”.
The jury found the defendant guilty as charged[2] and, on appeal, the Appellate Division affirmed by a closely divided court. In our view, the dissenting justices were correct in concluding that the statement was improperly received in evidence.
In Miranda v. Arizona (384 U. S. 436, supra), the Supreme Court held, in no uncertain terms, that the prosecution may not use a person’s statements stemming from interrogation by law enforcement officers after he has been taken into “ custody ” or “otherwise deprived of his freedom * * * in any significant way” (p. 478), unless the prosecution establishes that he was, before being questioned, “ adequately and effectively apprised ”, among other things, of his right to remain silent and of his right to counsel (p. 467 et seq.).
It is conceded that, in the case before us, the police officer gave no warning or monition of any kind, and the primary question for decision is, of course, whether the defendant was deprived of his freedom in a “ significant way” when he was questioned by the police officer at gun point. To ask the question is to answer it. As our court wrote very recently, in People v. Rodney P. (21 N Y 2d 1), “ the Supreme Court intended that the warnings be given when the questioning takes place under circumstances which are likely to affect substantially the individual’s will to resist and compel him to speak where he would not otherwise do so freely ”’ (p. 11).[3] Such circumstances are clearly present in the case before us. As Justice Hopkists, dissenting below, observed, “ [a] drawn and pointed revolver has no ambiguity, and its compulsion is manifest. The threat is direct, and the need to comply immediate.” The high court of Arizona, faced with a fact pattern almost identical with that in this case, *122 wrote in similar vein (State v. Intogna, 101 Ariz. 275, 281): “ Certainly a defendant questioned by an officer with a drawn gun within three feet of him was deprived of his freedom in a significant way. Clearly, the officer had no intention of letting defendant escape and defendant himself could not have reached any other conclusion.” [4]
Questioning a suspect, possibly armed, subjects the policeman to considerable danger, and it is urged that he should be allowed to have his gun in hand to protect himself if the situation warrants it. This can hardly be disputed, and no decision or rule prevents a law enforcement officer from taking such a precaution. However, once the officer does draw his gun, the individual interrogated is actually deprived of his freedom and, under Miranda, he may no longer be questioned without first being warned of his rights, and any statement elicited without such warnings may not be received in evidence, or otherwise used, at a subsequent trial.
The statement made by the defendant Shivers was, it is true, “exculpatory” in nature but, as the Supreme Court in the Miranda case itself made clear, ‘‘no distinction may be drawn between inculpatory statements and statements alleged to be merely ‘ exculpatory. ’ If a statement made were in fact truly exculpatory it would, of course, never be used by the prosecution. In fact, statements merely intended to be exculpatory by the defendant are often used to impeach his testimony at trial or to demonstrate untruths in the statement given under interrogation and thus to prove guilt by implication. These statements are incriminating in any meaningful sense of the word and may not be used without the full warnings and effective waiver required for any other statement ” (384 U. S., at p. 477).
Since there is to be a new trial, we merely note that it was not error for the court to permit the District Attorney to cross-examine the defendant concerning an earlier attempted burglary, in which he was actually caught in the act, even though he had not been prosecuted therefor. (See, e.g., People v. Sorge, 301 N. Y. 198, 201; People v. Conroy, 153 N. Y. 174, 187; see, also, Fisch, New York Evidence, § 455.) The other arguments *123 advanced have been considered and found to be without substance.
The judgment appealed from should be reversed and a new trial ordered.

. The hearing and the trial were held on September 26, 1966, a date after Miranda had been handed down. Consequently, the People did not, and do not, dispute the applicability of that decision to this case.

. Jackson had pleaded guilty prior to commencement of the trial.

. Application of the rule turns not on the person’s status as suspect, or his amenability to arrest, but rather on the fact that his liberty has been materially restrained.

. It is not amiss to note that, in the course of its opinion in the Rodney P. case (supra), the court distinguished Intogna on the ground that “There is no evidence that the police officer had his gun drawn ” (21 N Y 2d, at p. 10).