THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v
ARMET COLES, Appellant.

Second Department, November 15, 1982

APPEARANCES OF COUNSEL

*Gerald H. Horowitz* for appellant.

*Thomas R. Sullivan, District Attorney (Anthony L. Galante* and *George E. McVay* of counsel), for respondent.

OPINION OF THE COURT

DAMIANI, J. P.

On October 15, 1979, at about 4:30 P.M., two men robbed the occupants of a taxicab at gunpoint at the corner of Brighton and Castleton Avenues in the West Brighton area of Staten Island. They took $38 from the driver and $2 from his passenger, ordered them out of the cab, and drove it away. The driver reported the robbery to the police and gave them descriptions of the two robbers. Among those who responded to his call were Officer Frank Tripoli and two other officers who had been patrolling the area in plain clothes in an unmarked car. At about 8:00 P.M. that evening, as the three officers were patrolling a different area of Staten Island, they saw two men standing in front of an apartment building and behaving suspiciously. The men watched people leave the building, started to follow some of them, and then "backed off". Officer Tripoli noted that one of them, later identified as defendant, closely resembled the cab driver's description of one of the robbers in the earlier incident. On this basis, the officers approached the pair and, from a distance of 20 to 25 feet, saw defendant drop a shiny object into some bushes. On finding it to be a .25 caliber revolver, the officers frisked, handcuffed and arrested defendant; his companion was searched and released because he had done nothing unlawful.

The officers then drove defendant to the 120th Precinct. On the way, Officer Tripoli recited the *Miranda* rights to defendant. Defendant did not request the assistance of counsel, say that he had retained counsel, or express a desire to make a statement at the time. At the precinct, Officer Tripoli searched defendant's clothes. He found $2 in

his shirt pocket and $38 and a spent .25 caliber round in his pants pocket. He then spoke with an Officer Montoruli, who had also responded to the earlier call regarding the taxicab robbery. They discussed the similarities between defendant and the first suspect in that robbery. Based on this information, Officer Tripoli told defendant he would probably be facing a lineup as a likely suspect in that robbery. Defendant then asked him "if it would go easier if he talked". Tripoli replied that "it always goes easier if you tell the truth. It helps you out all the time." Defendant asked him again whether it would help: Tripoli replied that, if defendant talked, he, Tripoli, would tell the District Attorney that defendant had been co-operative and helped the police. Defendant then began to confess. Tripoli stopped him and read him his *Miranda* rights. Defendant indicated that he understood all of his rights and that he wished to make a statement without the presence of an attorney. He then confessed his participation in the taxicab robbery. The conversation took place within an hour after defendant's arrest.

The following morning, October 16, 1979, while Officer Tripoli was at the Criminal Court building getting defendant released from the holding pen in order to allow him to speak with his attorney in preparation for his arraignment, he and defendant engaged in further conversation. Defendant asked "Will it go any easier if I give you any more information?" Tripoli replied, "It has to go easier, especially if you tell us who the guy was with you." Defendant then said, "The guy with me was a fellow named Joey who is a fag from the Village."

Defendant was subsequently identified at a lineup by the two victims of the robbery. He was indicted on four counts of robbery in the second degree, three counts of grand larceny in the third degree, criminal possession of stolen property in the third degree, unauthorized use of a motor vehicle, and criminal possession of a weapon in the fourth degree. He moved to suppress his statements, the gun and money seized from him, and the in-court identification of him by the taxicab driver upon the grounds (1) that he had been unlawfully arrested, and that the statements, physical evidence and identification testimony should be sup-

pressed as the fruits of that unlawful arrest, (2) that he had not voluntarily waived his *Miranda* rights, and (3) that the lineup had been improperly conducted. The hearing court denied the motion, finding that there was probable cause for the arrest, that defendant was properly advised of his *Miranda* rights, that his statements were freely and voluntarily given, and that the lineup was properly conducted. Defendant subsequently pleaded guilty to two counts of robbery in the second degree, as an armed felony, and was sentenced to concurrent terms of two to six years' imprisonment.

■ ■ It is our opinion that Criminal Term properly denied so much of defendant's motion as sought suppression of his first statement to the police, and the gun, money and in-court identification. Defendant's suspicious behavior, his similarity to the description of one of the perpetrators of the taxicab robbery, his dropping of an object in the bushes at the approach of the officers and their discovery that the abandoned object was a gun, furnished probable cause for his arrest. While in the police car on the way to the station house, Officer Tripoli recited the *Miranda* warnings to defendant. Defendant responded to those warnings. However, he did not say that he wished to see a lawyer, nor did he say anything to the officer to indicate whether or not he had counsel on other unrelated charges. He did not express a desire to make a statement at that time. Thus, defendant had not invoked his right to counsel and the police were not aware that he had counsel if, in fact, he did. Therefore, at that point the police could properly interrogate him (see *People v Hobson,* 39 NY2d 479; *People v Garofolo,* 46 NY2d 592; *People v Rogers,* 48 NY2d 167; *People v Cunningham,* 49 NY2d 203; *People v Benitez,* 76 AD2d 196).

■ After arriving at the station, Officer Tripoli informed defendant that he would probably be in a lineup concerning the taxicab robbery. At that point the officer was not questioning defendant. Defendant asked if it would go easier on him if he confessed, and Officer Tripoli responded to his spontaneous inquiry, not by *promising* defendant lenient treatment, but merely by *stating a probability* that such treatment would be the result of a voluntary confes-

sion. Before allowing defendant to confess, Officer Tripoli then again advised defendant of his *Miranda* rights, asked him whether he understood each one, and asked him whether he wished to waive them and make a statement without the presence or assistance of counsel. Defendant replied affirmatively to each question. In addition, less than an hour had transpired since defendant's arrest; he had previously been arrested twice, and so was presumably familiar with police procedures. Thus, the credible testimony discloses that defendant explicitly waived his *Miranda* rights before making his first statement to the police. The case of *People v Campbell* (81 AD2d 300), relied on by defendant, is distinguishable. There, after reading the defendant his *Miranda* rights, but before asking whether he wanted to waive them, the police told defendant that they were going to dust a gun they had found near him for fingerprints and he should tell them if the gun was his. He then confessed that it was. We held in *Campbell* that under those circumstances, the defendant did not implicitly voluntarily waive his rights. Here, however, defendant did explicitly agree to waive his rights, and Officer Tripoli did not pressure him to confess or even directly suggest that he do so.

We hold, however, that defendant's second statement, made on October 16, 1979, should have been suppressed. Officer Tripoli questioned defendant at a time when he knew defendant was represented by an attorney. Under the circumstances, the officer had no right to question the defendant in the absence of counsel, and his statement in response to that questioning should have been suppressed (see *People v Hobson, supra; People v Garofolo, supra; People v Rogers, supra; People v Cunningham, supra; People v Benitez, supra*).

The principal remaining issue on this appeal is whether it can be said that the failure to suppress defendant's second statement was harmless error. We hold that it was. Our dissenting brother has concluded, to the contrary, that under *People v Grant* (45 NY2d 366), the harmless error rule may not be applied in any case involving a plea of guilty.

Although it is often said that a plea of guilty waives all nonjurisdictional defects (see, e.g., *People v Corti,* 88 AD2d 345; *People v Palmer,* 63 AD2d 1090; *People v Cornell,* 50 AD2d 608), an exception to that rule has been created by statute. An order finally denying a motion to suppress evidence is reviewable on appeal notwithstanding the fact that the judgment of conviction was entered upon a plea of guilty (CPL 710.70, subd 2). The manifest rationale behind this exception to the general rule is that the defendant's knowledge that his motion to suppress evidence has been denied can influence his decision to plead guilty because he may conclude that his chances for success at a trial are nil absent suppression and, in that event, he will be likely to accept an offer of a plea to a lesser included offense or an offer to a plea with a specific favorable sentence promise. This is especially true where the evidence sought to be suppressed is a confession for, as the Court of Appeals stated in *People v Ramos* (40 NY2d 610, 618-619), "it cannot be gainsaid that a confession is a most serious matter in the trial of a criminal case."

With the foregoing in mind we may now turn to an examination of *People v Grant* (45 NY2d 366, *supra*). In *Grant* the defendant moved to suppress his confession and his motion was denied. He then went to trial at which time the confession was part of the evidence admitted against him. After the close of the People's case, the defendant pleaded guilty. The Court of Appeals held that the confession should have been suppressed. The People had argued, however, that if the motion to suppress had been erroneously denied, the plea should not be undone because, in light of all the trial evidence of defendant's guilt other than the confession, the error in denying suppression was harmless. In rejecting the People's contention in that regard, the Court of Appeals reviewed the harmless error rule, observing that it had two components, namely, (1) the quantum and nature of the proof of defendant's guilt if the error were to be wholly excised and (2) the causal effect which it is judged that the particular error may nonetheless have had in contributing to the conviction (citing *People v Crimmins,* 36 NY2d 230, 240). The court observed that without a trial it was impossible to assess the quantum and nature of the

proof available to the People absent the evidence which should have been excluded. With respect to the second component, the court noted that it was the more important of the two in cases involving a plea of guilty after a motion to suppress had been denied (*People v Grant, supra,* p 378). Where the error in denying suppression was of constitutional dimension, the second component of the harmless error rule requires that "however overwhelming may be the quantum and nature of other proof, the error is not harmless under the Federal test if 'there is a reasonable possibility that the * * * [error] might have contributed to the conviction' " (*People v Grant, supra, pp 378-379; People v Crimmins, supra,* pp 240-241). When the conviction is based upon a plea rather than a verdict, the question of harmless error requires a determination as to "whether there is a reasonable possibility that the error contributed to the plea" (*People v Grant, supra,* p 379). That question, said the court (p 379), is one which an appellate court is "rarely equipped to answer without resorting to speculation."

In rejecting the People's contention the court said that it could not be sure that it was the other evidence adduced at Grant's trial which induced the plea and not the confession. Since it was possible that the improperly admitted confession could have influenced the plea, it had to be vacated and the matter had to be remitted for trial. The majority opinion concluded (pp 379-380): "In sum, when a conviction is based on a plea of guilty an appellate court will *rarely,* if ever, be able to determine whether an erroneous denial of a motion to suppress contributed to the defendant's decision, unless at the time of the plea he states or reveals his reason for pleading guilty. This is especially true when the defendant has unsuccessfully sought to suppress a confession (*People v Ramos, supra,* pp 618-619)" (emphasis added).

The important point to note is that in *Grant (supra)* the court used the word "rarely" and not the word "never". This, in our view, is one of the rare cases in which we can say that there is no reasonable possibility that the matter which the court erroneously failed to suppress contributed to the defendant's decision to plead guilty.

The distinction between *Grant (supra)* and the instant case is that there the denial of the motion to suppress was reversed, whereas here it is only being modified. In *Grant* the defendant's entire confession had to be suppressed. Here only an insignificant part of all the defendant's statements should have been suppressed. In *Grant* the Court of Appeals was asked to conclude that defendant pleaded guilty because of other evidence which the People had against him and not because of his erroneously admitted confession. In this case the question is whether the guilty plea was induced by defendant's full confession of his personal complicity in the taxicab robbery, which was made on the day of his arrest and which was properly held admissible, or by the statement made on the following day in which he identified the man who assisted him in perpetrating the robbery, and which should have been, but was not, suppressed.

In *People v Schaeffer* (56 NY2d 448), the Court of Appeals recently dealt with a case in which, like the one at bar, the defendant had made multiple statements to the police and with respect to one of which Criminal Term had erroneously denied suppression. The court stated in relevant part (pp 454-456):

"The harmless error rule, as it relates to error of constitutional dimension, is, simply stated, 'that there is no reasonable possibility that the error might have contributed to defendant's conviction and that it was thus harmless beyond a reasonable doubt (*Chapman* v. *California,* 386 U.S. 18; *Fahy* v. *Connecticut,* 375 U.S. 85).' (*People v Crimmins,* 36 NY2d 230, 237.) While easily articulated, however, its application at times presents a considerable challenge (see, generally, McCormick, Evidence, § 183, p 431; Kamisar, La Fave and Israel, Modern Criminal Procedure [5th ed], pp 809-818; Mause, Harmless Constitutional Error: The Implications of Chapman v. California, 53 Minn L Rev 519; Notes, 83 Harv L Rev 814, 20 Stanford L Rev 83; see, generally, Traynor, The Riddle of Harmless Error, pp 1-26).

"Especially is this true when the flawed evidence, as here, is in the nature of a confession, since, as pragmatic practitioners long ago learned, confessions of crime, su-

premely self-condemnatory acts, are almost sure to weigh most heavily with fact finders (see *People v Ramos,* 40 NY2d 610, 618-619; McCormick, Evidence [2d ed], § 148, p 316; Richardson, Evidence [10th ed — Prince], § 556). Nevertheless, before constitutional error, even when it deals with confessions, may be found to be harmless, it is not necessary that the untainted evidence on which the verdict in the case must be supported demonstrate undisputable guilt. Rather, the reasonable doubt standard, extremely high though it is, still leaves room for judgmental determination of harmlessness (e.g., *People v Sanders,* 56 NY2d 51, 66-67). In cumulative statement cases this invites caution.

"Thus, reviewing courts should take into account the degree to which tainted statements are duplicative of untainted ones and, to the extent that they are not, the nature and extent of the differences. For, though the corroborative nature of an overlap between a statement whose admission is infected with error and one which is not may contribute to the weight a fact finder gives to one which was properly received, still the more they differ the greater the possibility that the additional matter supplied by the tainted one was a *sine qua non* of the production of the verdict.

"And, because consideration of whether an error is harmless requires an evaluation not only of the tainted matter, but of the strength of the case absent the taint, the court must focus on the reliability and persuasiveness of the untainted matter and its source. So, for instance, written statements may be 'looked at as more reliable than their more evanescent oral counterparts' (*People v Garofolo,* 46 NY2d 592, 602, *supra;* see *People v Prince,* 50 NY2d 883 [tainted statement taken by an Assistant District Attorney in his official capacity held not harmless though untainted one was of similar content]).

"In short, neither side of the evidentiary equation may be ignored; in the end, the picture must be seen as a whole. The ultimate question, of course, must be whether the People, as the beneficiary of the error, have fully borne the burden of establishing harmlessness by the strict, though not unrealistic *Chapman-Crimmins* standard; fair trial

requires no less (*Chapman v California,* 386 US 18, 24, *supra*)."

In the case at bar, all the damage to defendant was done by his first confession of personal complicity, and the subsequent statement, that he committed the crime with "Joey * * * a fag from the Village", added virtually nothing to the People's case so far as proof of defendant's guilt was concerned. We can, therefore, say with certainty that it was the court's denial of suppression of the "mountain" of the first confession, and not the "molehill" of the second, which played the only significant part in inducing this plea.

We have considered defendant's other contentions and find them to be without merit.

GIBBONS, J. (dissenting). Although I agree with the conclusion of the majority that defendant's second confession, given to Police Officer Tripoli in the courthouse prior to arraignment at a time when he knew that the defendant was represented by counsel, was impermissibly obtained and, therefore, suppressible, I am, however, constrained to vote for reversal on the established authority of *People v Ramos* (40 NY2d 610) and *People v Grant* (45 NY2d 366). I can perceive no legal justification for the application of the harmless error rule to sustain the instant judgment of conviction which was based upon defendant's guilty plea entered after his motion, *inter alia,* to suppress his confession had been denied and before the trial had begun.

In *People v Crimmins* (36 NY2d 230, 240), it was held that the application of the harmless error rule entails an evaluation of the quantum and nature of the proof, adduced at a trial, of the defendant's guilt, excluding the alleged error from such consideration, and the causal effect which such error may have had in producing the guilty verdict.

Since this evaluation requires the existence of an accumulation of *trial evidence,* upon which the fact finders based their verdict of guilty, in order to measure the prejudicial effect of the error, the rule has, per force, been, in the main, limited to cases involving trial errors.

The Court of Appeals in *People v Grant* (45 NY2d 366, *supra*) determined that, in the absence of a trial, this

process of evaluation cannot be performed. It held as follows (p 378): "In the typical case of a conviction based on a plea, neither of these factors can be properly evaluated, particularly when the error involves an improper denial of a pretrial motion to suppress. *Without a trial* there will be little if any evidence in the record, apart from the proof which should have been excluded. And *without a verdict,* there is no predicate for determining what causal effect the error had or might have had upon the fact finder" (emphasis added).

The opinion in *People v Schaeffer* (56 NY2d 448), upon which the majority relies, involved a jury verdict after trial and after all the evidence had been received, and, therefore, is distinguishable from the instant matter in which there was neither a trial nor a verdict which could provide a predicate for a judgmental determination concerning the "causal effect the error had or might have had upon the fact finder", as the same is referred to in *People v Grant* (*supra,* p 378), nor do I perceive any language in *People v Schaeffer* (*supra*) which evinces an intent to overrule the particular holdings in *People v Grant* (*supra*) and *People v Ramos* (*supra*), insofar as they exclude consideration of harmful error in cases of guilty pleas entered before trial.

The differing variables which may have induced a defendant to plead guilty relegates an appellate court to mere speculation to ascertain whether and to what degree an erroneously denied motion to suppress may have been instrumental in motivating a defendant to plead guilty, and whether a reasonable possibility existed that the error in the ruling induced the plea. In this connection, the court in the *Grant* case held as follows (pp 379-380):

"When the conviction is based on a plea — instead of a verdict — the question must at least be reformulated to determine whether there is a reasonable possibility that the error contributed to the plea (cf. *People v Ramos,* 40 NY2d 610, 618-619, *supra*).

"This question however is one which an appellate court is rarely equipped to answer without resorting to speculation. Unlike a verdict, which must necessarily be based exclusively on the evidence submitted at trial, a defen-

dant's decision to plead guilty may be based on any factor inside or outside the record. Thus a conviction based on a plea of guilty simply reflects the fact that for some reason, sufficient to the defendant, he decided to waive his trial rights (see, e.g., *North Carolina v Alford,* 400 US 25; *People v Serrano,* 15 NY2d 304, 310) * * *

"[W]hen a conviction is based on a plea of guilty an appellate court will rarely, if ever, be able to determine whether an erroneous denial of a motion to suppress contributed to the defendant's decision, *unless at the time of the plea he states or reveals his reason for pleading guilty.* This is especially true when the defendant has unsuccessfully sought to suppress a confession (*People v Ramos, supra,* pp 618-619)" (emphasis added).

As explained by the court, the rare situation where an appellate court will be able to determine whether an erroneous denial of a suppression motion contributed to the defendant's intent to plead guilty is when, at the time of his plea, he articulates the reason for his plea. Such revelation is, indeed, rare and is nonexistent in the instant matter. In the absence of any expressed reason motivating defendant's plea herein, there is no way to ascertain whether he was induced to plead guilty because of the confirmative effect of his second confession upon the first, or whether the defendant would, in any event, have pleaded guilty in the absence of such later confession.

CPL 710.70 (subd 2) affords a defendant appellate review of an order denying a motion to suppress "upon an appeal from an ensuing judgment of conviction notwithstanding the fact that such judgment is entered upon a plea of guilty." This statute represents a legislative policy which allows a defendant to test, by the appellate process, the legality of the evidence which he sought to suppress even after conviction by plea. If it be established on appeal that the evidence was illegal and that the motion to suppress was erroneously denied, the effect of such appellate ruling is to eliminate the specific evidence as viable proof in the continued prosecution of the case. The matter may then proceed without such evidence. However, to hold, after the evidence has been found to have been obtained in violation of defendant's constitutional rights, that even if such ille-

gal evidence were to have been used at a trial, it would, at the worst, have been harmless error, is to frustrate the obvious legislative purpose of the statute, on the one hand, and, on the other, to indulge in conjecture as to what other possible available evidence of guilt would be presented at the ensuing trial and how such evidence would be refuted by the defendant.

In *People v Ramos* (40 NY2d 610, 618-619, *supra*), where, under similar circumstances, the defendant had pleaded guilty after his motion to suppress two inculpatory statements had been properly denied as to the first and erroneously denied as to the second, which, as here, was also obtained with knowledge that the defendant was then represented by counsel, the Court of Appeals, in vacating the plea and suppressing the *later statement,* held, in language strikingly applicable to the instant matter, as follows:

"Although there may be cases in which the error of admitting excludable evidence may not require reversal, it cannot be gainsaid that a confession is a most serious matter in the trial of a criminal case. It is enough in this case to note that the confession was a likely factor which might have induced the plea and might have affected substantially a verdict upon a trial.

"Accordingly, although there is other evidence in support of the defendant's guilt, the proper disposition would call for restoring the case to its prepleading status (*People v Hobson,* 39 NY2d 479; cf. CPL 470.55). The order of the Appellate Division should be reversed, the plea vacated, and the defendant's statement before the Assistant District Attorney suppressed."

Accordingly, in view of the finding by this court that the second statement was illegally obtained and therefore should have been suppressed, it follows that the judgment should be reversed, on the law, the plea be vacated, and the matter remitted to Criminal Term for further proceedings on the indictment.

LAZER and MANGANO, JJ., concur with DAMIANI, J. P.; GIBBONS, J., dissents and votes to reverse the judgment, vacate the plea and grant defendant's suppression motion

to the extent of suppressing defendant's statement made on October 16, 1979, in an opinion.

Judgment of the Supreme Court, Richmond County, rendered February 20, 1981, affirmed.