OPINION OF THE COURT
Memorandum.
The order of the Appellate Division should be affirmed.
*666 It was only after defendant had been frisked and his hands handcuffed behind his back that, in consequence of the discovery of an empty shoulder holster, Officer Kraft asked him where the gun was. Pointing to a liquid soap carton several feet away, defendant replied, “The gun is over there.” At the time defendant was surrounded by four police officers whose guns had been returned to their holsters because, as Officer Kraft testified, “the situation was under control”. Nothing suggests that any of the officers was by that time concerned for his own physical safety.
Inasmuch as defendant’s response to the police interrogation occurred while he was in custody, before he had been given the preinterrogation warnings to which he was constitutionally entitled, the courts below properly suppressed defendant’s statement and the gun which Officer Kraft had found on reaching into the liquid soap carton to which defendant had pointed. Similarly, the statements made by defendant only minutes later after he had been given his preinterrogation warnings were properly suppressed as having been tainted by the seizure of the gun and defendant’s prewarning statement as to its location.
Even if it be assumed that an emergency exception to the normal rule might be recognized if the purpose of the police inquiry had been to locate and to confiscate the gun for the protection of the public as distinguished from their desire to obtain evidence of criminal activity on the part of defendant — a proposition as to which it is not necessary in this case to express an opinion — there is no evidence in the record before us that there were exigent circumstances posing a risk to the public safety or that the police interrogation was prompted by any such concern. Nor, so far as appears from the record, was any such theory advanced by the People at the suppression hearing. Undeniably neither of the courts below, with fact-finding jurisdiction, made any factual determination that the police acted in the interest of public safety.
The two cases on which the dissent would rely are inapposite. In People v Huffman (41 NY2d 29) the question was put to the defendant while the police were engaged in a general investigation of possible criminal activity but *667 before they were aware that any crime had been committed and was framed as a threshold inquiry seeking general information only (“What are you doing back here?”) rather than calculated to elicit evidence of criminal activity (“Where is the gun?”). In People v Chestnut (51 NY2d 14, cert den 449 US 1018) where the defendant’s challenge was based primarily on his constitutional right to be free from unreasonable search and seizure under the Fourth Amendment of the Federal Constitution rather than his constitutional right to preinterrogation warnings, although the defendant and his companion were lying prone on the ground and the officers were standing over them with their guns drawn, the defendant had not been reduced to a condition of physical powerlessness as here, i.e., the situation was not yet “under control”, and the police question was found to have been prompted by the officers’ concern for their personal safety. We noted that the absence of any constitutionally mandated preinterrogation warnings did not call for suppression inasmuch as there was no custodial interrogation.