■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JORGE MAYORGA, Also Known as CARLOS MARTIN, Appellant. — Appeal by defendant from a judgment of the County Court, Nassau County (Plumadore, J.), rendered July 7, 1981, convicting him of criminal sale of a controlled substance in the second degree, upon his plea of guilty, and imposing sentence. The appeal brings up

for review the denial, after a hearing, of that branch of the defendant's motion which sought to suppress certain oral and written statements made by him to the police. ¶ Judgment reversed, on the law and the facts, plea vacated, motion granted, insofar as it is to suppress all of the defendant's oral and written statements made to the police, and case remitted to the County Court, Nassau County, for further proceedings. ¶ On June 20, 1980, at approximately 7:00 P.M., several detectives assigned to the Long Island Drug Enforcement Task Force were at the intersection of the Long Island Expressway and Little Neck Parkway, near the Nassau-Queens border, in connection with a prearranged plan to purchase cocaine. Shortly after 7:00 P.M., another car approached in which a confidential informant, the defendant and another were seated. After the transaction was consummated, a detective ordered a surveillance unit to arrest everybody in the vehicle. ¶ The defendant was removed at gunpoint, patted down, and, prior to the administration of *Miranda* warnings, was asked by one of the officers, "Do you know what's going on here?" He responded, "I'm doing a favor for a friend", indicating, as well, that he was to have made $500 on the deal. The defendant was thereupon transported to the office of the Nassau County Narcotics Squad. ¶ During the trip, *Miranda* warnings were administered and the defendant stated that "[a] friend of mine asked me if I knew anybody who had cocaine for sale, and I told him I did. I met with [another person arrested at the same time] and we came out here and I was arrested". He again admitted that he was to have made $500 on the transaction. For the remainder of the trip, the defendant was silent. ¶ The defendant and the officers arrived at the office of the Narcotics Squad at about 7:45 P.M. Pedigree and related information was obtained from the defendant, immediately after which the defendant was asked "if he was interested in helping himself" and he answered: "Yes, I'll do anything". The detectives indicated that he could help himself if he would tell them and show them who was engaged in selling cocaine. The defendant said that "[i]f you can get me out" he would do so as he knew people "in Florida and * * * in New York". ¶ The defendant was again advised of his *Miranda* rights and he initialed a waiver form. He thereupon made a detailed oral confession which was reduced to writing and signed. ¶ After a hearing, the County Court suppressed the defendant's first statement, made on the scene prior to the administration of *Miranda* warnings (the People assume, without conceding, that suppression of this statement is mandated by *People v Quarles,* 58 NY2d 664, cert granted __ US __, 103 S Ct 2118), but refused to suppress the subsequent oral statement made in the police vehicle and the oral and written confessions made at the police precinct. We reverse. ¶ Based upon a practical "assessment of external events" we are compelled to conclude that the defendant was "subjected to such a continuous interrogation" that the *Miranda* warnings subsequently administered "were insufficient to protect his rights" (*People v Chapple,* 38 NY2d 112, 115). We perceive no "definite, pronounced break in the interrogation that the defendant may be said to have returned, in effect, to the status of one who is not under the influence of questioning" (*People v Chapple, supra,* p 115; see, also, *People v Johnson,* 64 AD2d 907, affd 48 NY2d 674; *People v Glover,* 58 AD2d 814). ¶ The dissent concedes that suppression of the oral statements made at the scene of the arrest and in the police car is required and agrees that there is a temporal proximity between those oral statements and the oral and written confessions made at the police precinct. Nonetheless, it finds that what it characterizes as "the intervening bargaining acts of the defendant" constitute the requisite break in the chain of events. We cannot agree. ¶ As set forth above, the record indicates that the defendant's purported agreement to help the officers was neither spontaneous nor the result of an independent, voluntary act by the defendant. It was initiated by the arresting officers and rather

than a break in the interrogation, it was part and parcel of it. ¶ Moreover, we also disagree with the dissenters' suggestion that a harmless error analysis may be employed, if, as is their view, suppression of only the oral statements made before defendant's arrival at the police precinct is required. "[W]hen a conviction is based upon a plea of guilty an appellate court will rarely, *if ever*, be able to determine whether an erroneous denial of a motion to suppress contributed to the defendant's decision, unless at the time of the plea he states or reveals his reason for pleading guilty" (*People v Grant*, 45 NY2d 366, 379-380; emphasis added). There is no indication upon which to hinge such a determination here for "a confession is a most serious matter in the trial of a criminal case" and "[i]t is enough * * * to note that the confession was a likely factor which might have induced the plea and might have affected substantially a verdict upon a trial" (*People v Ramos*, 40 NY2d 610, 618-619; see, also, *People v Purdy*, 53 NY2d 806; *People v Tyler*, 99 AD2d 537; but cf. *People v Coles*, 89 AD2d 471). Titone, J. P., Bracken and Brown, JJ., concur.

Rubin, J., dissents and votes to affirm the judgment, with the following memorandum, in which Thompson, J., concurs. While I agree with my brethren of the majority that the defendant's oral statements to the police at the time of his arrest and while being transported to the police precinct should be suppressed, I cannot agree that his oral confession, made at the police precinct and reduced to a signed, written statement, should also be suppressed. Since the rationale for not suppressing the oral confession and its written counterpart is the same, both statements will hereafter be referred to as the precinct confessions. ¶ Whether an accused believes himself so committed by a prior statement that he feels bound to make another depends on his state of mind, which is a factual question (*People v Tanner*, 36 AD2d 690, affd 30 NY2d 102). When statements are sought to be suppressed premised on the "cat out of the bag" theory (*United States v Bayer*, 331 US 532, 540), an examination of the defendant's testimony as to his state of mind and, thus, an assessment of his credibility, is required (*People v Chapple*, 38 NY2d 112, 115; see *People v Tanner, supra*). The defendant did not testify at the *Huntley* hearing. Consequently, there is no basis in fact for concluding that the defendant made his subsequent statement in the police vehicle and the precinct confessions on constraint of his first pre-*Miranda* warning statement (see *People v Glover*, 58 AD2d 814, 815). ¶ The majority concludes that the defendant's postwarning statements must be suppressed on the theory that these statements were made in response to a continuous chain of custodial interrogation, which rendered the *Miranda* warnings given prior to said declarations ineffective to protect his rights. ¶ The "continuous chain of events" theory, adopted by the Court of Appeals in *People v Chapple* (*supra*, p 114), is based on an assessment of external events. The theory, as applied in the case of *People v Johnson* (64 AD2d 907, affd 48 NY2d 674), would compel the suppression of the postwarning oral statement that the defendant made in the police vehicle while en route to the precinct because there is no proof in the record that the brief time span between the prewarning oral statement and the statement in the police vehicle was of sufficient duration to enable defendant to reflect fully and freely both on his situation and how he wished to proceed. This is not the situation with regard to the precinct confessions made after the *Miranda* warnings were administered for the second time. ¶ In assessing the external events as to the precinct confessions, the majority has placed undue emphasis on the temporal proximity between the oral statements and the precinct confessions, and has failed to take cognizance of the intervening bargaining acts of the defendant which demonstrate that the precinct confessions were made after a voluntary, knowing and intelligent waiver of his rights. While at the precinct, in order to help himself, the defendant agreed to disclose the names of cocaine dealers and

to give a written statement in exchange for a promise from the officer recording pedigree information to notify the District Attorney's office of his cooperation. It should be noted that the officer's promise does not fall within the category of promises or statements by law enforcement officials which create a substantial risk that the defendant might falsely incriminate himself (see CPL 60.45, subd 2, par [b], cl [i]), because said promise never rose to the level of an absolute assurance that the defendant's cooperation would result in more favorable treatment. At best, it can be construed as offering the defendant only the mere *possibility* that his cooperation might result in less severe treatment of his case. Said decision would rest with the District Attorney (see *People v Perry,* 77 AD2d 269, 273; *People v Taylor,* 87 AD2d 771, 774-775 [concurring mem of Lupiano, J.], affd 57 NY2d 729; cf. *Bram v United States,* 168 US 532; *People v Urowsky,* 89 AD2d 520). Moreover, the defendant had voluntarily served as interpreter for another officer asking pedigree questions to his non-English-speaking codefendant. Such conduct furnishes additional evidence that the defendant, while en route to the precinct, had fully reflected upon his status and had contemplated what he believed to be an appropriate course of action. Consequently, there is evidence in the record from which to infer that the time span between the oral declarations and the precinct confessions, albeit short, was of sufficient duration, in this case, to return the defendant to the status of one who is not under the influence of questioning. ¶ Also noteworthy is the absence of any allegation of improper force, coercion, brutality, trickery or any other impropriety except for the surveillance officer's omission to admonish the defendant of his *Miranda* rights prior to the on-the-scene inquiry. The brief on-the-scene inquiry, which constituted a custodial interrogation (see *People v Shivers,* 21 NY2d 118, 122), consisted of two questions. Furthermore, the defendant was asked only one other question while en route to the precinct, aside from being asked if he comprehended English and the *Miranda* warnings administered in the police vehicle. Therefore, even though the interrogation to that point may be viewed as continuous under the chain of events theory, it was not protracted. Based on the totality of these circumstances, the postwarning precinct confessions were clearly the product of the defendant's free will and should not be suppressed. ¶ Nor should the plea of guilty be vacated because the County Court erroneously denied that part of the defendant's motion which was to suppress his postwarning oral statement made in the police vehicle. Although an appellate court will rarely be able to determine whether an erroneous denial of a motion to suppress contributed to a defendant's decision to plead guilty, unless at the time of the plea he states or reveals his reason for pleading (see *People v Grant,* 45 NY2d 366; *People v Ramos,* 40 NY2d 610, 618-619), the instant case presents one of these rare occasions. Compared with the postwarning, police vehicle, and oral statement, the precinct confessions were far more detailed and clearly inculpated the defendant in the cocaine transaction. Furthermore, the defendant's oral precinct confession was reduced to a writing and signed by him. It is well-nigh impossible for anyone, including the defendant, to avoid the conclusion that the written precinct confession would be accorded greater weight by a jury than the oral statement made by him in the police vehicle prior to his arrival at the precinct. As noted by Judge Fuchsberg, "written documents, especially those signed by the parties to be charged, are commonly understood, even if sometimes undeservedly, to evince a degree of deliberation and authenticity not generally associated with oral proof of the same events * * * This is not a preference confined to the legal mind alone. Serious written materials * * * ordinarily are looked at as more reliable than their more evanescent oral counterparts, which are so much more often subject to the vagaries of memory and narration" (*People v Garofolo,* 46 NY2d 592, 602). In view of the admissibility of the precinct confessions, there is no reasonable possibility that the

erroneous failure to suppress the oral statement made in the police vehicle contributed to the defendant's plea (see *People v Marino,* 49 NY2d 774, 775, concurring opn of Meyer, J.; *People v Coles,* 89 AD2d 471).