OPINION OF THE COURT
Richard Lee Price, J.
Defendant Hector Reyes is charged with the crime of bur *175 glary in the first and second degrees and assault in the second degree arising out of an incident that occurred on or about May 23, 1986 in The Bronx.
Defendant moves to suppress a statement that he claims was designed to appear spontaneous but that in fact was made as result of intentional police provocation.
A Huntley hearing was held on July 16, 1986 to determine the admissibility of the statement.
At the hearing Police Officer Chrystel Rodriguez testified for the People. I find her testimony candid and credible and make the following findings of fact and conclusion of law.
FACTS
On May 23, 1986 at approximately 2:15 a.m., Police Officer Chrystel Rodriguez of the 46th Precinct was patrolling the area in a marked police car when she received a radio transmission indicating that a violent family dispute was taking place at 2263 Tiebout Avenue in The Bronx. Officer Rodriguez and her partner Rodney Santos responded to the call by proceeding to that address. There, on the sidewalk in front of a building was a man yelling to a woman in an apartment three floors above the street, "Bitch, throw me down my wallet. I want my wallet”. The woman to whom he was yelling and shouting obscenities called out to the police, "He’s the one that [sic] hit me”. The woman also indicated that she was coming down to the street. While Officer Santos went into the building to escort the woman, Mary Ann Reyes, to the street, Officer Rodriguez inquired of the man, Hector Reyes, as to the cause of the altercation. Mr. Reyes stated that following an argument between himself and the woman, he had dropped his wallet on the floor of the apartment as he ran out. He added, "she’s my wife and I can go in there anytime I want * * * and I can do anything I want”. The woman, Mrs. Reyes, appeared in the street moments later. Her shirt was torn and her face and eye were swollen. Mrs. Reyes stated to the officers that Hector Reyes had pushed his way into her apartment, hit her in the face and back, and ripped the phone off the wall. Based on these accusations, Officer Rodriguez handcuffed Hector Reyes, placing him under arrest. The defendant was taken to the 46th Precinct station house by Officer Rodriguez. Another radio patrol car was summoned to transport Mary Ann Reyes to the station house. At the precinct the defendant was taken to the front desk where he was read the Miranda warnings. The defendant indicated that he under *176 stood his rights and stated that he was willing to answer questions.
Officer Rodriguez then conducted a short interview at which time she requested defendant’s name, address, and date of birth. Defendant was then searched but no property was seized or vouchered. Defendant refused to sign the precinct interview form from which Officer Rodriguez read him his Miranda rights. As defendant was led from the front desk toward a back room he traversed a distance of approximately 20 feet and came to within 8 to 10 feet of Mary Ann Reyes, who, as she sat on a bench, was being interviewed by Officer Santos. As the defendant passed by Mrs. Reyes, he declared, "I’ll be out tomorrow. They can’t do anything to me because I’m your legal husband. When I get out tomorrow, I’ll finish what I started, and you’ll get one right between the eyes”.
The defendant contends that the police paraded him past his wife in handcuffs with the object of creating a "confrontational situation” thereby provoking the defendant into making incriminating statements. The defendant also argues that his refusal to sign the precinct interview form attests to his reluctance to make a statement and not, as characterized by Police Officer Rodriguez, his unwillingness to acknowledge the return of his property following its inspection. The defendant’s arguments at the suppression hearing concerned only the statement that he made at the precinct.
The People’s arguments addressed the admissibility of two statements: specifically, the one made to the police at the scene of the crime and the other made to Mary Ann Reyes in the precinct house. The People contend that the first statement was made in response to an inquiry when defendant was not in custody. Hence, it was not the subject of custodial interrogation susceptible to Miranda safeguards.
With respect to the second statement, the People term defendant’s argument "highly creative” in the effort to characterize as the result of police provocation what was clearly a spontaneous declaration.
LAW
FIRST STATEMENT
The constitutional privilege against compulsory self-incrimination does not bar self-incrimination. It prohibits only that which is genuinely compelled, namely, the result of coercion or overbearing of the will of the accused (see, New York v *177 Quarles, 467 US 649 [1984]; see also, People v Ferro, 63 NY2d 316 [1984]). The procedural safeguards, popularly known as Miranda warnings, are designed to counteract the coercive atmosphere inherent in the process of in-custody interrogation (Miranda v Arizona, 384 US 436 [1966]). They are "not intended to hamper the traditional function of police officers in investigating crime * * * [such as] general questioning of citizens in the fact-finding process” (Miranda, supra, at p 477; see, People v Huffman, 41 NY2d 29 [1976]; People v Yanus, 92 AD2d 674 [3d Dept 1983]; see also, People v Shivers, 21 NY2d 118 [1967]; cf. People v De Bour, 40 NY2d 210, 218-219 [1976]).
Applying the foregoing principles to this case, it is clear that the initial inquiry of defendant by Officer Rodriguez was investigative rather than custodial in nature and was designed to clarify the nature of the situation confronted. Given defendant’s behavior, the police action constituted a proper discharge of police duty to investigate the report of an alleged family dispute (see, People v Winchell, 98 AD2d 838 [3d Dept 1983]; People v Mertens, 97 AD2d 595 [3d Dept 1983]; People v Yanus, supra).
Moreover, an individual in defendant’s position could not have reasonably considered himself in custody while responding to Officer Rodriguez’ inquiry (People v Yukl, 25 NY2d 585, 589, cert denied 400 US 851). There was no attempt on the part of police to restrain defendant. The nature of the questioning was not coercive ("What’s going on here? It’s pretty late.”). The police did not draw their guns, abuse the defendant in any way or overwhelm him with their presence (People v Yukl, supra; People v Ribble, 77 AD2d 814 [4th Dept 1980]; see also, Matter of Kwok T., 43 NY2d 213, 220 [1977]).
I conclude, therefore, that defendant’s first statement may not be suppressed since it was not the product of custodial interrogation (see, Miranda v Arizona, supra; see also, People v Washington, 127 Misc 2d 451 [Sup Ct, Kings County 1985]).
SECOND STATEMENT
With respect to the statement made by defendant to complainant in the police precinct, there are two grounds upon which defendant moves to suppress. The first is based upon his contention that the statement was a spontaneous outburst deliberately and impermissibly provoked by the police. The second is based upon the argument that there was no valid waiver of his right to remain silent since he refused to sign the precinct interview form. Since the resolution of the issue *178 of police conduct will determine whether the waiver will affect suppression, the first issue that I shall consider is whether the police impermissibly elicited an incriminatory response from defendant.
A statement volunteered or spontaneously made by a defendant after he invokes his right to remain silent will not be suppressible, unless it results from police interrogation under circumstances which do not honor the suspect’s right to remain silent (see, Rhode Is. v Innis, 446 US 291, 300-301; People v Ferro, supra, at p 322).
The term "interrogation” under Miranda refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response (Rhode Is. v Innis, 446 US 291 [1980], supra). Such conduct by the police has been termed the "functional equivalent” of express questioning (Rhode Is. v Innis, supra, at pp 300-301). Thus, before interrogation, considered in this broader sense, can begin, a suspect must be advised of his right to remain silent, his right to counsel and his right at any time prior to or during questioning to cut off such questioning and invoke his right to remain silent (Miranda v Arizona, supra, at pp 473-474). Since the Miranda rules are designed to counteract the coercive pressure of a custodial setting, a suspect’s right to remain silent, once invoked, must be "scrupulously honored” (see, People v Ferro, 63 NY2d 316, 322 [1984]).
In order to determine whether the police conduct amounts to the functional equivalent of express questioning the courts have focused upon the perceptions of the suspect, rather than the intent of the police. This is so because the issue is not the subjective intent of the police but rather what words or actions, in light of their knowledge concerning the suspect, the police should have known were reasonably likely to elicit an incriminating response (see, People v Ferro, supra). The skillful employment of religious compulsion (Brewer v Williams, 430 US 387 [1977]), deceitful confidences (United States v Henry, 447 US 264 [1980]), and placement of evidence before the accused (People v Ferro, supra) have been deemed the functional equivalent of express questioning and held to amount to the unlawful interrogation of a suspect.
Turning to the facts of this case, I hold that the police action was not the functional equivalent of interrogation. It *179 cannot be said that Officer Rodriguez "should have known” that by escorting defendant past the complainant an inculpatory statement was likely to be elicited. The suspect no longer appeared to be in an excited or agitated state. There was no evidence that the officer was aware of, much less that she arranged for, the complainant’s location and conspicuous presence in the precinct house. Moreover, the actions of Police Officer Rodriguez can be considered among those normally attendant to arrest and custody and thus qualify as an exception to otherwise putative suggestive conduct. Since the police action was not the functional equivalent of questioning, the defendant’s remark must be deemed a spontaneous declaration. Defendant’s motion to suppress this statement is denied.
Having thus resolved the first issue, it is of no consequence to the issue of suppression whether the defendant’s waiver of his right to remain silent was valid. The defendant’s statement was deemed spontaneous. Therefore, it is admissible whether or not defendant invoked his right to remain silent. Only an invalid waiver of the right to remain silent in the presence of express questioning or its functional equivalent would have led to the suppression of the statement elicited.
Nevertheless, for purposes of this motion, I shall make a determination as to whether the defendant’s waiver was proper.
The burden of proof rests with the People to establish beyond a reasonable doubt that the defendant knowingly, intelligently and voluntarily waived his privilege against self-incrimination. (Miranda v Arizona, 384 US, at p 475; see also, People v Wise, 46 NY2d 321 [1978].)
At the Huntley hearing, the People demonstrated that the defendant understood his rights as they were read to him. The People established that there was no compelling influence. Moreover, the defendant stated that he would answer questions and his general demeanor as described by Officer Rodriguez appeared to confirm the validity of his waiver. Since the defendant did not testify at the hearing nor did he offer a witness on his behalf, his refusal to sign the precinct interview form remains unexplained. Nevertheless, in view of his positive statement, his refusal does not diminish or mitigate his waiver. The question of waiver is not one of form, but rather, whether it appeared that the defendant knowingly and voluntarily waived his rights. (See, North Carolina v Butler, 441 US 369, 373 [1979]; People v Wise, supra.)
*180 I find that the defendant made a valid waiver of his right to remain silent.
For the foregoing reasons, the defendant’s motion to suppress his statement is denied in its entirety.