OPINION OF THE COURT
Timothy J. Flaherty, J.
On September 5, 2002, the instant case was referred to me for the purpose of conducting a combined Mapp, Huntley, Wade and Dunaway hearing. The People called one witness, Police Officer Christopher Schneider, whose testimony I find to be credible and reliable. No witnesses were called by the defense. I make the following findings of facts and conclusions of law.
Findings of Fact
On February 22, 2002, at approximately 8:25 p.m., two women were robbed by three individuals, one of whom displayed a silver handgun. Accompanying the robbers were two young children who, although they did not participate in the holdup, did flee the scene with the three perpetrators. Officer Schneider and two other officers responded to the scene within minutes, placed the two victims in an unmarked police car and began to canvass the neighborhood, in the hopes that the women could spot the perpetrators. At approximately 8:55 p.m., in the vicinity of 90th Avenue and 207th Street, four blocks from the scene of the robbery, Schneider spotted the defendant with two others. As it was dark out, he aimed the headlights of his vehicle at them whereupon the two victims identified the three individuals as the robbers. Schneider and his fellow officers got out of their vehicle, detained and frisked the individuals. Schneider recovered a nine millimeter air pistol from the waistband of the defendant. As he did so the defendant stated several times that it was not a real gun — that it was an air pistol. The defendant was immediately placed under arrest.
The victims of the robbery were very anxious to recover their property, which included a key chain with rosary beads attached thereto. Accordingly, in an attempt to recover the stolen goods, without giving him Miranda warnings, Schneider falsely told the defendant that the victims would refuse to press charges if they got back their property. In response, the defendant told the officer where the property was located and led him to a set of keys and a wallet which were immediately recovered.
*12 Conclusions of Law
There is no merit to defendant’s contention that the identifications should be suppressed. The identifications at bar were made only a half hour after the robbery and within four blocks of the crime scene. In the absence of a level of suggestive conduct not present in this case, an identification made within close temporal and geographic proximity to the commission of the crime will pass constitutional scrutiny (People v Ortiz, 90 NY2d 533, 537 [1997]; People v Duuvon, 77 NY2d 541 [1991]). There is no such suggestive conduct at bar. Indeed, prior to the identifications the defendant was not handcuffed, not in a patrol car nor otherwise detained by the police. While it is true that Officer Schneider is the one who first noticed the defendant and his cohorts, nothing was said by him or any of his fellow officers that would indicate a belief or suggestion on their part that the individuals were the robbers. Accordingly, defendant’s motion to suppress the identification testimony is denied.
The identifications made by the robbery victims clearly provided the police with probable cause to place the defendant and his companions under arrest (People v Douglas, 138 AD2d 731, 732 [2d Dept 1988]). The search of the defendant was contemporaneous with the arrest and was also proper (Chimel v California, 395 US 752 [1969]). The seizure of the weapon was therefore proper and, as such, the defendant’s motion to suppress it is denied.
The protestations of the defendant that the seized weapon was not a real gun but merely an air pistol are also admissible. They were spontaneously uttered by him and were not the product of any interrogation on the part of the officer (People v Lynes, 49 NY2d 286 [1980]; People v Kaye, 25 NY2d 139 [1969]). Defendant’s motion to suppress these statements is denied.
As to the portion of defendant’s motion which seeks to suppress the statements made by the defendant as to the location of the stolen property and the admission of the stolen property itself, the court reaches a different conclusion. Defendant contends that since he was under arrest and in custody, any subsequent interrogation should have been preceded by the furnishing of Miranda warnings and a proper waiver of the rights set forth therein. In the absence of Miranda warnings, defendant contends that suppression is mandatory. Defendant further contends that if the statements are inadmissible, it follows that the keys and wallet which were subsequently seized must also be suppressed as the fruit of the illegally obtained statement.
*13 There is no question but that defendant was under arrest and in custody at this juncture of the encounter. Officer Schneider bluntly stated that the defendant was under arrest. The objective circumstances clearly support his assertion since the defendant (1) had been identified by two people as having robbed them, (2) had been detained, (3) had been searched, and (4) was found to have been in possession of a weapon.
The ensuing words and actions of Officer Schneider present a stark example of how the law can often conflict with both the practical exigencies of the situation and the legitimate interest and expectation that crime victims rightfully have that the police will do all they can to recover their property. There is no doubt in this court’s mind that this was Officer Schneider’s singular purpose, as he himself testified. Nor is there any doubt that had he not acted as he did, the odds that the key chain, the rosary beads and the wallet would ever have been returned to their rightful owners were long indeed. Thinking quickly, decisively and applying common sense, Officer Schneider used a simple ruse which worked. The property was recovered and the victims were quickly made whole.
In employing this strategy, however admirable and successful though it may have been, Officer Schneider ran afoul of two lines of cases designed to protect the rights of the defendant in such a circumstance without regard for the interests of his victims. First, he failed to precede his inquiry with Miranda warnings. Second, the defendant’s response was induced by the promise Officer Schneider made that if he cooperated the victims would not press charges. Each of these factors, standing alone, are fatal to the admissibility of the statements elicited.
Miranda v Arizona (384 US 436 [1966]), of course, mandates that defendants in custody be warned of their constitutional rights prior to interrogation. None of the limited exceptions to this rule are applicable to the circumstances at bar. This was not a situation wherein the police officer needed to investigate or clarify an uncertain situation that might permit one or two Miranda-less inquiries, as is permitted by the line of cases exemplified by People v Huffman (41 NY2d 29 [1976]). Rather here, “where criminal events at the crime scene have been concluded and the situation no longer requires clarification of the crime or its suspects, custodial questioning will constitute interrogation” (People v Soto, 183 AD2d 926, 927 [2d Dept 1992]; Huffman, supra at 34; People v Shivers, 21 NY2d 118 [1967]), and Miranda warnings must be given.
*14 Courts have also carved exceptions to the Miranda requirements when, in their view, the exigencies of the circumstances are sufficiently compelling. In People v Krom (61 NY2d 187 [1984]) the Court of Appeals extended the “emergency exception” (first applied by the Supreme Court in 4th Amendment situations [see, Michigan v Tyler, 436 US 499 (1978); Warden v Hayden, 387 US 294 (1967); People v Mitchell, 39 NY2d 173 (1976)]) to the state constitutional right to counsel and thereby endorsed the police interrogation of a defendant when their purpose was to ascertain the location of his kidnapping victim in the hopes of saving her life. In People v Middleton (54 NY2d 474 [1981]) the Court declined to apply that same right to a defendant who, after invoking his right to counsel, then proceeded to attempt to bribe the arresting officer, thus creating a “new crime” exception to the rule.
In New York v Quarles (467 US 649 [1984]), the Supreme Court created a “public safety” exception to the Miranda rule under factual circumstances not dissimilar to those at bar. In Quarles (supra), the police entered a supermarket in order to apprehend a man suspected of having committed a rape at gunpoint. Upon spotting him they ordered him to halt, arrested him and placed him in handcuffs. Then, without first administering Miranda warnings, the police asked him where the gun was. The defendant replied, “Over there” and led them to the weapon which the police recovered.
It would not be difficult to apply the reasoning that led the Quarles Court to bypass the Miranda requirement in the case at bar. Like the officer in Quarles, Officer Schneider faced a “kaleidoscopic situation * * * where spontaneity rather than adherence to a police manual is necessarily the order of the day” (Quarles at 656). They went on to construe the rationale in Miranda (supra) as follows: “Procedural safeguards which deter a suspect from responding were deemed acceptable in Miranda in order to protect the Fifth Amendment privilege; when the primary social cost of those added protections is the possibility of fewer convictions, the Miranda majority was willing to bear that cost” (Quarles at 657).
But when the social cost was more than the “possibility of fewer convictions” (id.), to wit, the threat the gun posed to the safety of the public, the Quarles Court found that the price of the “prophylactic rule protecting the Fifth Amendment privilege against self-incrimination” (Quarles at 657) was too high. The Court refused to place the officer in Quarles in a position where he would have to, in “a matter of seconds,” decide *15 whether to ignore Miranda so as to maximize the chances of recovering the gun (but at the price of rendering the gun inadmissible at trial) or to Mirandize the defendant and “possibly damage or destroy their ability to obtain” the gun should the defendant invoke his right to remain silent (Quarles at 657-658).
Officer Schneider faced a similar conundrum and likewise had only seconds to determine his course of action. In this case, the higher price, had defendant been Mirandized and declined to speak, would almost certainly have been that the victims’ opportunity to recover their property would be lost forever.
In the opinion of this court, the salutary prophylactic value of the Miranda rule is outweighed by the troubling image of these recent robbery victims watching the police officer who has just apprehended their assailants forebear from perhaps the only opportunity to recover their property and choosing instead to close off this investigative opportunity by cautioning the thief that he need not reveal the location of the goods should he choose not to do so. Accordingly, absent the additional infirmity discussed below, this case would be an inviting scenario by which to, by dint of the Quarles rationale, advocate a comparable exception to the Miranda rule when a goal of the interrogation is the recovery of property stolen by the defendant.
Unfortunately, however, Officer Schneider’s interrogation, in addition to skirting Miranda, also ran afoul of the line of authority that mandates suppression when the statement was obtained: “by means of any promise or statement of fact, which promise or statement creates a substantial risk that the defendant might falsely incriminate himself’ (CPL 60.45 [2] [b] [1]).
Officer Schneider’s assurance that the victims would not press charges if they got their property back is precisely the type of promise that is interdicted by both the above-cited statute and case law (see, Bram v United States, 168 US 532 [1897]; People v Bay, 76 AD2d 592 [1st Dept 1980]). In Bay (supra at 599), the Court embraced the holding in Commonwealth v Meehan (377 Mass 552 [1979]), to wit, that, “What is prohibited, if a confession is to stand, is an assurance, express or implied, that it will aid the defense or result in a lesser sentence.”
In People v Urowsky (89 AD2d 520 [1st Dept 1982]), after defendant was arrested at the conclusion of an undercover buy operation, the defendant elicited a commitment from one of the officers on the scene that if he would show them where the rest *16 of the drugs were located they would let him go. The Appellate Division suppressed both the statements defendant made on this subject as well as the drugs to which he in fact led the officers, as violative of CPL 60.45 (2) (b) and the fruit of the poisonous tree doctrine (Wong Sun v United States, 371 US 471 [1963]) respectively.
In this court’s view Urowsky controls the situation at bar. The promise made by Officer Schneider indisputably implied that he would not be prosecuted if he turned over the stolen goods. Accordingly, the defendant’s response must be suppressed under the statute. Moreover, because this type of suppression falls under the “involuntariness” doctrine, the statement is also suppressed for purposes of impeachment, should the defendant choose to take the stand (People v Gaines, 147 AD2d 895 [4th Dept 1989]; People v Walker, 110 AD2d 730 [2d Dept 1985]).
Because the discovery and seizure of the stolen property was the fruit of the illegally obtained statements, the wallet, keys and rosary beads are suppressed as well (Wong Sun, supra; Urowsky, supra).