Wachtler, J.
The defendants were convicted, at a jury trial, of robbery in the second degree (Penal Law, § 160.10) and sodomy in the first degree, by "forcible compulsion” (Penal Law, § 130.50, subd 1). The incident occurred at a Bron?c housing complex in March of 1973. At that time both of the defendants were 18 years old. On this appeal they claim that (1) the evidence was legally insufficient (2) the court *504 should have suppressed certain statements made by the defendants to the police, in the absence of counsel, but after an attorney had appeared and (3) their joint representation by one attorney deprived them of effective assistance of counsel because there was a conflict of interest.
The complainant stated that in 1973 she resided in a housing complex in The Bronx. She had lived there for several years with her husband and three children. During this period she had frequently seen the defendants in the lobby and hallways, but she had never spoken to them prior to March 3, 1973. On that date, at about 5:30 in the afternoon, she and her four-year-old son went to a nearby building to use the laundry room. When she returned, an hour or two later, she pushed her shopping cart into the elevator and waited to be taken to her sixth-floor apartment. Just as the doors were closing the defendant Harvey "jerked” them open and he and Coleman entered the elevator.
At the sixth floor the elevator stopped and the doors opened. But when she started to leave, Coleman stood between her and the doors and told her she was not getting off. While she and Coleman argued over this, Harvey reached over, took her son and placed him on his shoulders. The boy began to cry. One of the defendants then pressed the button for the tenth floor and the elevator proceeded up.
When they reached the tenth floor Coleman once again stood in front of the open door and told the complainant she was not getting off. He then jammed her shopping cart into the open door and told her to take off all her clothes. When she protested the defendant shouted at her and Harvey reached up and unscrewed the light bulb. Her son then began to scream in the darkness. Harvey shouted at the boy to "shut up”, but he would not, and Harvey reached up and put the light bulb on again. Finally, after the defendants "hollered” at her several times complainant began removing her clothes because, as she stated at the trial, "I was scared for my life and I was scared for my son.” As she removed her coat $5 fell onto the floor. Harvey told her to hand it over, which she did. Coleman then told her to "pull” her clothes off faster. He grabbed her blouse and her pants and ripped them.
When complainant had all her clothes off, Harvey "zipped” his pants down and told her, in effect, to perform fellatio. She protested saying she had never done this before, but the defendant responded "you are going to do it now.” With her *505 son still on Harvey’s shoulders she complied with his demand. As she stated at the trial, "After I was up there I had nobody else to help me fight. I did it because I was scared and I suffered for my life * * * I was scared for myself and I was scared for my son.” There were three acts of sodomy in all: two with Harvey and one with Coleman. Finally complainant was able to work her way between the defendants and the door. She kicked the shopping cart out of the way and ran down the hall calling for help. The defendants left the elevator and retreated down the staircase. With the help of a neighbor, she soon recovered her son and her clothing from the elevator.
The complainant’s son, who was six at the time of trial, gave unsworn testimony which generally corroborated his mother’s statements except that he was unable to identify the defendants. The arresting officer testified that when he asked the defendants why they became involved with complainant, they stated without elaboration that "she is always trying to make out with us and we just laugh at her and we got out at the 10th floor.” According to the officer, Coleman spoke first and Harvey just said "yes, yes” to Coleman’s statement.
On appeal Harvey claims that this evidence was legally insufficient to establish that the sodomy was committed by forcible compulsion (Penal Law, § 130.50, subd 1). The Penal Law (§ 130.00, subd 8) states that forcible compulsion "means physical force that overcomes earnest resistance; or a threat, express or implied, that places a person in fear of immediate death or serious physical injury to himself or another”. The People concede that complainant was not overcome by physical force and she herself admitted that there were no express threats of physical harm, serious or otherwise, to herself or her child. The question then is whether there is sufficient evidence to support a finding of an implied threat which placed her in fear of immediate death or serious physical injury.
Harvey apparently recognizes that his alleged conduct and Coleman’s was not entirely free of menace. He urges however that there is no basis for concluding that the threat inherent in their actions involved immediate death or serious injury as opposed to minor injury or pain. The point, of course, is not what the defendants would have done, but rather what the victim, observing their conduct, feared they would or might do if she did not comply with their demands. As noted complain *506 ant testified that she feared for her life and the life of her son. She stated that at the time she capitulated she was virtually imprisoned and isolated in the elevator; the defendants had sezied her son, taken the little money she possessed and had deprived her of all her clothing. Under the circumstances the jury could find that when the defendants proceeded from outrage to outrage, and finally shouted at her to perform the sexual acts, she genuinely feared that if she did not comply, she or her son or both of them might be seriously injured or killed. In short, on this record, the jury could find that complainant was telling the truth when she stated "I did it because I was scared and I suffered for my life * * * I was scared for myself and I was scared for my son.”
On a related point both of the defendants argue that the testimony of complainant’s six-year-old son is insufficient to corroborate her testimony. Under the statute then in effect (Penal Law, § 130.15, repealed by L 1974, ch 14, § 1) the victim’s testimony had to be corroborated by "other evidence tending to: * * * Establish” both the attempt to commit the deviate sexual acts and the element of forcible compulsion. The son’s testimony which supported the mother’s statements on these points, was not under oath, and thus it too had to be corroborated pursuant to CPL 60.20 (subd 3). That statute provides that a "defendant may not be convicted of an offense solely upon the unsworn evidence of a child less than twelve years old, given pursuant to subdivision two.”
The defendants urge that the testimony of two witnesses, each of whom has to be corroborated, cannot be used to corroborate each other. This they urge is similar to one accomplice seeking to corroborate another, which we have held to be insufficient to satisfy the accomplice rule (see, e.g., People v Mullens, 292 NY 408, 414; People v O’Farrell, 175 NY 323, 327-328). But cross-corroboration is permitted when, as here the "witnesses were required to be corroborated under different statutes and for different reasons” (People v Jelke, 1 NY2d 321, 333).
The defendants also claim that the statements they gave to the arresting officer should have been suppressed because they were obtained in violation of their right to counsel.
There was a pretrial suppression hearing. The arresting officer testified that on the day after the crime the defendants were brought to the station house by their parents but at police request. He then informed them they were under arrest *507 and advised them of their rights. He initially testified that when he informed the defendants of their right to assigned counsel, "they said they have an attorney.” On cross-examination he added that he believed it was Coleman who had informed him that they already had counsel. However he later testified that he received a phone call from the lawyer and had not been informed by Coleman that they were represented by counsel. In fact, he denied that he had previously testified to the contrary. His last statement on this point was that a lawyer had called, although he could not recall "what lawyer”, and they had a conversation in which the lawyer reportedly said that he was "a lawyer for one of the defendants.” Despite this the officer, who had waited over 45 minutes for the complainant to arrive, immediately questioned both defendants and obtained the joint statement which was later used at the trial.
Harvey also testified at the hearing. He stated that he had been advised of his rights but that he had been represented by counsel—who was also counsel for Coleman—from the time of arrest.
The People now concede that Coleman was represented by counsel at the time he was questioned. However, relying on the arresting officer’s testimony, they urge that there is no basis for concluding that Harvey was similarly represented. The officer’s testimony of course is hopelessly inconsistent. It is not even clear that he ever knew whether the attorney represented both or only one of the defendants, and if so which one. If he was this confused at the time of questioning he should not have questioned either defendant (cf. People v Ramos, 40 NY2d 610, 618, 619).
In any event the record shows that the hearing court expressly rejected the officer’s ambivalent testimony and generally credited Harvey’s testimony.* The motion was denied because the court held that the defendants had been advised *508 of their rights and voluntarily chose to make the statement. The court felt that the voluntary nature of the statement was buttressed by the fact that "it was on face value wholly exculpatory, not incriminating in any capacity”.
The motion should have been granted. We have long held, and recently reaffirmed that "Once a lawyer has entered a criminal proceeding representing a defendant in connection with criminal charges under investigation, the defendant in custody may not waive his right to counsel in the absence of the lawyer (People v Arthur, 22 NY2d 324, 329)” (People v Hobson, 39 NY2d 479, 481).
The statements, although obviously not a full confession of guilt, were not entirely exculpatory (see, e.g., People v Ross, 21 NY2d 258; see, also, People v Shivers, 21 NY2d 118, 122). They contained a damaging admission which was later used to place the defendants at the scene of the crime and to establish identity.
The prejudice to Coleman is obvious. By his plea of not guilty he had denied everything and elected to put the People to their proof. His own pretrial statement, placing him at the scene, virtually took the issue of identification out of the case. Harvey on the other hand took the stand and elaborated on his statement at the trial, although he continued to deny the commission of the crime. His testimony however was not completely consistent with his prior statement, which was noted by the prosecutor at the trial (cf. People v Miles, 23 NY2d 527, 542-544). If the proof of identity had been firmly established by other evidence, the error in admitting the statement might be said to be harmless (cf. People v Sugden, 35 NY2d 453; People v Miles, supra; but see People v Ramos, 40 NY2d 610, 618-619, supra). But here the only other proof submitted by the prosecutor to establish identity was the victim’s testimony, and it cannot be said that the denial of the motion did not affect the defendant’s decision to take the stand to explain the inadmissible pretrial statement. Under all the circumstances we believe that both defendants should be granted a new trial.
In view of this disposition it is not necessary to discuss at length the defendants third point—concerning their claimed denial of the effective assistance of counsel because of the joint representation. It is sufficient to say that if, upon the new trial, the defendants are again jointly represented by one attorney, the court should "ascertain, on the record, whether *509 each defendant has an awareness of the potential risks involved in that course and has knowingly chosen it” (People v Gomberg, 38 NY2d 307, 313-314). We would note however that the record of the last trial does suggest that the defenses were in ponflict and that, on a few occasions, counsel failed to press an obvious point which would seem to benefit one defendant at the expense of the other.
The orders of the Appellate Division should be reversed and the case remitted to the trial court for a new trial.
Chief Judge Breitel and Judges Jasen, Gabrielli, Jones, Fuchsberg and Cooke concur.
In each case: Order reversed and a new trial ordered.

 Harvey’s testimony is also supported by the conceded fact that the defendants actually were jointly represented by the same attorney throughout the trial and all pretrial proceedings. In addition the prosecutor herself introduced evidence at the trial showing that the defendants were inseparable, apparently even when it came to engaging in other criminal activities. Indeed they had arrived at the station house together, with their parents, had been jointly arrested, jointly advised of their rights, jointly questioned and gave a joint statement. Under these circumstances, something more than the vague and irreconcilable beliefs of the police officer would be required to sustain a finding that the statement was voluntary because the attorney who concededly represented Coleman, did not represent Harvey at that time.