James M. DIGIOIA, Petitioner,

v.

Daniel SENKOWSKI, Superintendent, Clinton Correctional Facility; Hon. Robert Abrams, Attorney General of State of New York, Respondents.

92–CV–776.

United States District Court, N.D. New York.

Nov. 19, 1993.

---

John T. Casey, Jr., Albany, New York, for petitioner.

Robert Abrams, Atty. Gen., Albany, NY (Jeffrey M. Dvorin, Asst. Atty. Gen., of counsel), for respondents.

## MEMORANDUM–DECISION AND ORDER

McCURN, Senior District Judge.

### BACKGROUND

On January 30, 1989, after a jury found him guilty of three counts of sodomy in the first degree,[1] James M. DiGioia was convict-

---

1. Sodomy in the first degree occurs when, among other things:

   A person ... engages in deviate sexual intercourse with another person:
   By forcible compulsion; ....

   N.Y. Penal Law § 130.50(1) (McKinney 1987). Forcible compulsion, in turn, is defined as, *inter alia:*

[a] threat, express or implied, which places a person in fear of immediate death or physical injury to himself, herself or another person, or in fear that he, she or another person will immediately be kidnapped.

N.Y. Penal Law § 130.00(8)(b) (McKinney 1987).

ed in Rensselaer County Court. The Appellate Division, Third Department affirmed that conviction, *People v. DiGioia*, 168 A.D.2d 865, 564 N.Y.S.2d 533 (3d Dep't 1990), and the Court of Appeals denied leave to appeal. *People v. DiGioia*, 77 N.Y.2d 994, 571 N.Y.S.2d 920, 575 N.E.2d 406, *reconsid. denied*, 78 N.Y.2d 965, 574 N.Y.S.2d 944, 580 N.E.2d 416 (1991). DiGioia was sentenced to three concurrent terms of five to fifteen years imprisonment and is currently incarcerated in New York State. On June 17, 1992, DiGioia filed with this court a habeas corpus petition under 28 U.S.C. § 2254. In that petition, DiGioia sets forth seven separate grounds which he believes require that his conviction and resultant sentence be vacated.

Pursuant to 28 U.S.C. § 636(b)(1)(B), DiGioia's petition was referred to Magistrate Judge Ralph W. Smith, Jr. ("the Magistrate") for a report and recommendation. Finding none of petitioner's seven challenges meritorious, the Magistrate recommended that the habeas corpus petition be dismissed in its entirety. The petitioner timely filed objections to the Report–Recommendation, although he objects to only four of the seven findings made by the Magistrate. Specifically, he objects to the following findings: (1) that the definition of "forcible compulsion" found in section 130.00(8)(b) of the New York Penal Law is not unconstitutionally vague; (2) that based upon the evidence before the trial court, "any rational trier of fact could have found that an implied threat existed and that the requisite element of forcible compulsion was proven[;]"[2] (3) that there was no basis for a finding of prosecutorial misconduct amounting to a denial of petitioner's right to a fair trial; and (4) that petitioner was not denied his constitutional right to confrontation. The state defendants did not file any objections. Therefore, the court will limit its review of the Magistrate's Report–Recommendation to the four objections now raised by the petitioner. *See Wesolek v. Canadair Ltd.*, 838 F.2d 55, 58 (2d Cir.1988) (failure to timely file objections to report-recommendation deemed waiver of any further judicial review).

## DISCUSSION

### I. Standard of Review

The timely filing of objections has been recognized as triggering *de novo* review under 28 U.S.C. § 636(b)(1).[3] Therefore, in light of petitioner's timely filed objections, the court will apply a *de novo* standard of review. Under this standard, the court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C.A. § 636(b)(1) (West Supp.1993). Before going on to consider the petitioner's objections, the court notes that none of the facts set forth by the Magistrate are disputed, although in one instance the interpretation of those facts is at issue.[4] In any event, because the parties do not dispute the facts contained in the Report–Recommendation, the court hereby accepts those facts and considers petitioner's objections against that factual background.

### II. Vagueness

As to petitioner's vagueness challenge, the Magistrate concluded that the statutory definition of forcible compulsion, found in section 130.00(8)(b) of the New York Penal Law, is not unconstitutionally vague because it gave "petitioner sufficient notice that his conduct would constitute a class B felony." Report–Recommendation at 7. The Magistrate further found that petitioner's conduct was forbidden under section 130.00(8)(b). *Id.* at 8. In reaching that conclusion, the Magistrate explained that section 130.00(8)(b) includes within the definition of forcible compulsion an implied threat, which is defined as a threat

---

**2.** Report–Recommendation at 10.

**3.** "Within ten days after being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a *de novo* determination of those portions of the report ... to which objec-

tion is made." 28 U.S.C.A. § 636(b)(1) (West Supp.1993).

**4.** More specifically, petitioner disagrees with both the opinion of the Magistrate, and apparently the jury, that an implied threat could be inferred from the evidence presented at petitioner's criminal trial.

"which places a person in fear of immediate death or physical injury to himself, herself or another person...." *Id.* (citing N.Y. Penal Law § 130.00(8)(b) (McKinney 1987)).

The Magistrate went on to reason that an implied threat can be conveyed, among other ways, indirectly through an oral statement; and that petitioner's oral statements could have been interpreted as "an implied threat that the victim would suffer physical injury[.]" *Id.* at 8–9. At this point, the Magistrate did not specify to which oral statements he was referring. Earlier in the Report–Recommendation, however, the Magistrate noted that after the complainant accepted a ride home from the petitioner, he proceeded to go in another direction—away from her home. When the complainant advised the petitioner that they were going the wrong way, the "[p]etitioner replied that they were going for a little ride, at which point she began crying and asking repeatedly to be taken home." *Id.* at 3. In addition, in response to petitioner's inquiry as to whether "she gave head," complainant responded, "No." *Id.* (citing Record at 196). At that point, petitioner advised the complainant, "[w]ell, you have a problem." *Id.* After that, petitioner got out of the car, walked around to where the complainant was and ordered her out of the car. *Id.* at 3–4. When the complainant responded "No" to petitioner's inquiry as to whether she had any drugs, he grabbed the complainant's purse, telling her, "Don't move. Stay there or you are going to be in trouble." *Id.* at 4 (citing Record at 197). Further details of this incident are recounted at pages four through five of the Report–Recommendation. Eventually, following three acts of sodomy, and after leaving the complainant several miles from her home at approximately 3:30 a.m., the petitioner told the victim "that he could be very violent and that he could track her down if she said anything to anyone." *Id.* at 5. Presumably it is that evidence, in combination, to which the Magistrate was referring when he concluded that petitioner's oral statements could have been interpreted as an implied threat as that term is used in § 130.00(8)(b).

The Magistrate bolstered his finding that the definition of forcible compulsion is not unconstitutionally vague by noting that "the highest court of New York State has aided in the prevention of arbitrary and discriminatory enforcement of this statute by establishing clear guidelines for the trier of fact." *Id.* at 9. The Magistrate went on to note that in *People v. Thompson*, 72 N.Y.2d 410, 534 N.Y.S.2d 132, 530 N.E.2d 839 (1988), the Court of Appeals held that the "proper focus" in determining whether threats amount to forcible compulsion "is on the state of mind produced in the victim by the defendant's conduct, ...." *Id.* at 416, 534 N.Y.S.2d at 134, 530 N.E.2d at 841. The Court of Appeals thus explained, "[t]he inquiry required in determining whether threats amount to forcible compulsion is not what the defendant would or could have done, 'but rather what the victim observing [the defendant's] conduct, feared [he] would or might do if [the victim] did not comply with [his] demands[.]" *Id.* (quoting *People v. Coleman*, 42 N.Y.2d 500, 505, 399 N.Y.S.2d 185, 187, 369 N.E.2d 742, 744 (1977)). The Court of Appeals then explained that this is the proper focus "because the *sine qua non* for criminal liability for sex offenses under our Penal Law is lack of consent, resulting from either forcible compulsion or incapacity to consent...." *Id.* (citing Penal Law § 130.05).

The petitioner strenuously objects to the Magistrate's finding that New York's definition of "forcible compulsion" passes constitutional muster. Petitioner offers a two-pronged challenge to § 130.00(8)(b)'s definition of "forcible compulsion." First, he asserts that that statute "is void for vagueness as construed by the Court of Appeals since **no potential defendant** can ascertain the subjective state of mind of the potential complainant before, during or after a sexual act; ...." Objections at 3 (emphasis added). Second, the petitioner contends "that he was denied due process of law in how this statute was **applied to him** since the People never produced any evidence of a threat of physical injury, either express or implied." *Id.* (emphasis added). As presented, petitioner is making both a "facial" and an "as-applied" challenge to section 130.00(8)(b), although in analyzing these two separate challenges, pe-

titioner confuses the scope of proper inquiry under each. Likewise, the Magistrate did not clearly distinguish between a facial and as-applied challenge. However, because plainly both are raised in petitioner's objections, this court will make such a distinction. Moreover, as will be seen, that distinction is critical to an analysis of the Magistrate's finding that section 130.00(8)(b) is not unconstitutionally vague.

When a statute is challenged facially, that means it is "invalid *in toto*—and therefore incapable of any valid application." *Steffel v. Thompson*, 415 U.S. 452, 474, 94 S.Ct. 1209, 1223, 39 L.Ed.2d 505 (1974). "To show a statute is unconstitutionally vague on its face, '[t]he complainant must prove that the enactment is vague 'not in the sense that it requires a person to conform his conduct to an imprecise but comprehensible normative standard, but rather in the sense that no standard of conduct is specified at all. Such a provision simply has no core.'''" *United States v. Schneiderman*, 968 F.2d 1564, 1567 (2d Cir.1992) (quoting *Village of Hoffman Estates v. The Flipside*, 455 U.S. 489, 495 n. 7, 102 S.Ct. 1186, 1191 n. 7, 71 L.Ed.2d 362 (1974) (quoting in turn *Smith v. Goguen*, 415 U.S. 566, 578, 94 S.Ct. 1242, 1249, 39 L.Ed.2d 605 (1974) (citation omitted)). It is well established, however, that "vagueness challenges that do **not** involve the First Amendment must be examined in light of the specific facts of the case at hand and not with regard to the statute's facial validity." *United States v. Nadi*, 996 F.2d 548, 550 (2d Cir.1993) (emphasis added) (citing, *inter alia*, *Chapman v. United States*, 500 U.S. 453, ——, 111 S.Ct. 1919, 1929, 114 L.Ed.2d 524 (1991)); *see also United States v. Jackson*, 968 F.2d 158, 160 (2d Cir.1992) (citations omitted) (same). Therefore, "[o]ne to whose conduct a statute clearly applies may not successfully challenge it for vagueness." *Hoffman Estates*, 455 U.S. at 495 n. 7, 102 S.Ct. at 1191 n. 7 (emphasis added). Stated somewhat differently, one "who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others." *Id.* As the Supreme Court explained:

[t]he rationale is evident: to sustain such a challenge, the complainant must prove that the enactment is vague 'not in the sense that it requires a person to conform his conduct to an imprecise but comprehensible normative standard, but rather in the sense that no standard of conduct is specified at all.'

*Id.* (quoting *Coates v. City of Cincinnati*, 402 U.S. 611, 614, 91 S.Ct. 1686, 1688, 29 L.Ed.2d 214 (1971)). Thus, as the Supreme Court has instructed, "[a] court should ... examine the complainant's conduct **before** analyzing other hypothetical applications of the law." *Id.* (emphasis added). In other words, when a statute is attacked on both facial and as-applied grounds, the latter must be considered first unless, of course, First Amendment issues are at stake. *Cf. United States v. Jackson*, 968 F.2d 158, 161 (2d Cir.1992) ("Because this challenged does not implicate First Amendment freedoms the district court's conclusion that the provisions are facially invalid was erroneous and must be reversed.").

Applying those rules to the present case, the court must first engage in an analysis of section 130.00(8)(b) as it applies to petitioner. That is so because petitioner's facial challenge to this particular statute does not implicate First Amendment concerns. *See Hoffman Estates*, 455 U.S. at 495–96, 102 S.Ct. at 1191–92. Rather, petitioner's facial challenge to section 130.00(8)(b) focuses on the fact that, in his view, that statute is impermissibly vague because it fails to give adequate notice that certain conduct may be proscribed thereunder. The second part of petitioner's facial challenge is "that the statutory term 'implied threat' impermissibly delegates basic policy matters to policemen [sic], judges and juries on an *ad hoc* and subjective basis with the attendant dangers of arbitrary and discriminatory application." Objections at 4 (citation omitted). Consequently, because as just explained, petitioner's facial challenge to § 130.00(8)(b) does not invoke First Amendment concerns, under the Supreme Court's reasoning in *Hoffman Estates* and its progeny, if the court finds that that statute is constitutional as applied to the petitioner, then his facial challenge must fail. *See id.* at 495, 102 S.Ct. at 1191; *see also*

*United States v. Strauss*, 999 F.2d 692, 698 (2d Cir.1993) (citations omitted) ("Because 'the statute is judged on an as-applied basis,' *Maynard v. Cartwright*, 486 U.S. 356, 361, 108 S.Ct. 1853, 1858, 100 L.Ed.2d 372 (1988), one whose conduct is clearly proscribed by a statute may not successfully challenge it for vagueness.") Thus, the court will now turn to a consideration of petitioner's as-applied challenge.

▮ The two-part test for determining whether a statute is unconstitutionally vague as applied in a given case is well settled: a court must "first determine whether the statute 'give[s] the person of ordinary intelligence a reasonable opportunity to know what is prohibited' and then consider whether the law 'provide[s] explicit standards for those who apply [it].' "

*Strauss*, 999 F.2d at 697–98 (quoting *United States v. Schneiderman*, 968 F.2d 1564, 1568 (2d Cir.1992) (quoting in turn *Grayned v. City of Rockford*, 408 U.S. 104, 108, 92 S.Ct. 2294, 2298–99, 33 L.Ed.2d 222 (1972) (footnote omitted), *cert. denied*, —— U.S. ——, 113 S.Ct. 1283, 122 L.Ed.2d 676 (1993)). Insofar as the first prong is concerned, in *United States v. Harris*, 805 F.Supp. 166 (S.D.N.Y.1992), the court accurately explained the weaknesses inherent in such an inquiry:

> The first prong of the vagueness inquiry is often surreal. It presupposes that the accused, having formulated in his mind the course of conduct described in the indictment, then reads the section of the penal law under which he is subsequently charged to determine the legality of his acts....
>
> Nevertheless, constitutional vagueness analysis requires the assumption that people act that way.... What courts do in such cases is assume that the accused read the statute before acting, although it is most unlikely that he did. To borrow a phrase from another area of the law, the accused is considered to have constructive knowledge of the statute's prohibition, and to have that knowledge prior to the charged conduct. I also think it right to say that the accused's constructive knowledge extends to judicial interpretations of the statute. It is of course just as fanciful to suggest that the accused consulted the annotations after reading the statute; but constitutional vagueness analysis begins with the inquiry of whether the statute gives a person of ordinary intelligence a reasonable opportunity to know what is prohibited, and as a practical matter that analysis must include judicial interpretation of the statute in existence at the time of the accused's actions.

*Id.* at 178–79. This court wholeheartedly agrees with these insightful observations by Judge Haight.

▮ Viewing the present case with all of the foregoing in mind, the court concurs with the Magistrate's finding that the definition of forcible compulsion, and implied threat in particular, gave "petitioner sufficient notice that his conduct would constitute a class B felony." Report–Recommendation at 7. The petitioner contends that section 130.00(8)(b) did not provide him with sufficient notice that his conduct might be illegal because "every potential defendant would need to know what fear, if any, a sexual advance would generate in a complainant."[5] Objections at 4. With respect to notice, or the lack thereof, the petitioner further notes that "deviate sexual intercourse without consent is a Class A misdemeanor carrying a one year jail term ..., but deviate sexual intercourse on an "implied threat" theory, ..., is a Class B felony carrying 8⅓ to 25 years." *Id.* at 7 (citation omitted). Petitioner then asserts that "[s]imply proscribing conduct as "wrong" does not justify imposing the second longest sentence in New York jurisprudence, particularly when conduct that is merely non-consensual qualifies for a misdemeanor sentence. Forcible compulsion requires a higher showing than a mere lack of consent." *Id.*

The court is not persuaded by any of these arguments that petitioner lacked the requisite notice. Indeed, this last argument dis-

5. Petitioner makes this assertion in the section of his objections devoted to a facial challenge to section 130.00(8)(b), although the issue of adequacy of notice or fair warning is more accurately addressed in the context of an as-applied challenge.

tinguishing between a Class A misdemeanor and a Class B felony is not even responsive to the issue of notice. Furthermore, section 130.00(8)(b) did **not** " '[l]ull [the petitioner] into a false sense of security, giving him **no reason** even to suspect that his conduct might be within the scope.' " *U.S. v. Tannenbaum*, 934 F.2d 8, 11 (2nd Cir.1991) (emphasis added) (quoting *United States v. Herrera*, 584 F.2d 1137, 1149 (2d Cir.1978)). Assuming, as the court must, that petitioner familiarized himself with the relevant portions of the Penal Law and judicial interpretations thereof before committing the acts complained of, surely he should have had at least some reason to suspect that his conduct, as recounted in the Report–Recommendation and in the trial transcript, might constitute forcible compulsion within the meaning of section 130.00(8)(b).

Further, as in *Harris*, this court seriously doubts that the petitioner reviewed section 130.00(8)(b) and then decided that his conduct on December 18, 1987 would not be in violation thereof. *See Harris*, 805 F.Supp. at 178. In any event, prior to December 18, 1987, the date the acts complained of occurred, the New York Court of Appeals recognized that, "[w]hile it is true that forcible compulsion is an abstract concept, the statute cannot be termed ambiguous." *People v. Beam*, 57 N.Y.2d 241, 250, 455 N.Y.S.2d 575, 579, 441 N.E.2d 1093, 1097 (1982). As in *Beam*, there was adequate evidence here that petitioner used intimidation "to force his victim[ ] to comply with his desires." *See id.* And, after *Harris*, because *Beam* was decided prior to the date of the conduct complained of herein, the petitioner is charged with knowledge of that judicial interpretation. *See Harris*, 805 F.Supp. at 179.

█ Moreover, " '[o]bjections to vagueness ... rest on the lack of notice, and hence may be overcome in any specific case where reasonable persons would know that their conduct is at risk.' " *Strauss, supra,* 999 F.2d at 698 (quoting *Maynard,* 486 U.S. at 361, 108 S.Ct. at 1857). In the present case, a reasonable person in petitioner's shoes would know, or should have known, that his conduct, as previously detailed and as more fully set forth in the Report–Recommenda-

tion, would put him at risk of violating section 130.50(1)'s proscription against sodomy in the first degree. In addition, the record shows that the jury was instructed to decide whether the petitioner, " 'engage[d] in deviate sexual intercourse with [the victim], and did he accomplish that by forcible compulsion by threat, express or implied, which placed [her] in fear of immediate death or physical injury.' " Report–Recommendation at 10 (quoting Record at 688). The Magistrate determined that a jury could reasonably infer that petitioner's statements constituted an implied threat and that the evidence was sufficient to justify such an inference, and that determination is in accord with settled law in this state. *See People v. Hill,* 163 A.D.2d 852, 853, 558 N.Y.S.2d 380, 381 (4th Dep't 1990) (citing, *inter alia, People v. Yannucci,* 283 N.Y. 546, 549, 29 N.E.2d 185, 186 (1940)) ("[w]hether the sexual intercourse was voluntary or the result of forcible compulsion is a question of fact for the jury to determine."). The court therefore finds, as did the Magistrate, that section 130.00(8)(b) provided petitioner with adequate notice that his conduct could constitute forcible compulsion thereunder, thus subjecting him to a possible finding of sodomy in the first degree.

█ Turning next to the second prong of the vagueness inquiry, whether the law "provide[s] explicit standards for those who apply [it]," the court believes that it does. *See Schneiderman,* 968 F.2d at 1568. First of all, the statutory definition of forcible compulsion employs common words which are readily understandable. Second, as the Supreme Court has recognized, " '[e]ffective law enforcement often 'requires the exercise of some degree of ... [prosecutorial] judgment' but this alone does not render a statute unconstitutional.' " *Nadi, supra,* 996 F.2d at 552 (quoting *Schneiderman,* 968 F.2d at 1568 (quoting in turn *Grayned,* 408 U.S. at 114, 92 S.Ct. at 2302)). Third, the limiting phrase, "which places a person in fear of immediate death or physical injury to himself, herself or another person, or in fear that he, she or another person will be immediately kid-

napped[,]" [6] sufficiently narrows the scope of section 130.00(8)(b) to avoid potentially arbitrary or discriminatory applications. Thus, because the court agrees with the Magistrate that that statute provides the constitutionally required notice, and that it prohibits arbitrary or discriminatory application, the petitioner's objections to the unconstitutionality of section 130.00(8)(b)—both facial and as-applied—must fail.

After reviewing petitioner's remaining two objections as to prosecutorial misconduct and the right to confrontation, as well as the relevant portions of the Report–Recommendation, the court agrees with the Magistrate's conclusions with respect thereto. Therefore, for the reasons set forth herein, the court finds no merit to any of petitioner's objections to the March 25, 1993 Report–Recommendation of Magistrate Judge Smith. The court hereby adopts that Report–Recommendation and dismisses the petition of James M. DiGioia.

IT IS SO ORDERED.