OPINION OF THE COURT
Marcy L. Kahn, J.
This matter is before the court for a judicial determination of defendant’s duration of registration and level of notification pursuant to the Sex Offender Registration Act (SORA) (Correction Law § 168-n [1], [2]), based upon defendant’s conviction of one count of promoting prostitution in the second degree (Penal Law § 230.30 [2]; see Correction Law § 168-a [2]). On April 12, 2004, the court received a risk assessment recommendation from the Board of Examiners of Sex Offenders pursuant to Correction Law § 168-Z (6), recommending that defendant be *565 designated a Level 2 sex offender.[1] Prior to the hearing, the court received no notice from the People that they would seek at the hearing “a determination that differs from the recommendation [of the] board.” (See Correction Law § 168-n [3].)
A hearing pursuant to Correction Law § 168-n (3) was conducted on April 26 and 27, 2004, at which defendant, her counsel, and the People were present. At the conclusion of the hearing, this court rendered a determination designating defendant a Level 1 sex offender and finding no basis for a status designation requiring lifetime registration. This written opinion further explains this court’s findings of fact and conclusions of law as set forth in its oral ruling on April 27, 2004, in conformity with Correction Law § 168-n (3).
I. Background
On July 18, 2002, following a jury trial before this court, defendant was convicted of promoting prostitution in the second and third degrees (Penal Law § 230.30 [2]; § 230.25 [2]), endangering the welfare of a child (Penal Law § 260.10 [1]), and criminal solicitation in the fourth degree (Penal Law § 100.05 [2]), in connection with defendant’s effort, at the direction of her pimp, to promote the prostitution of a 13-year-old girl.[2] At the time of the offense conduct, defendant was 22 years old. On September 20, 2002, defendant was sentenced as a first felony offender to concurrent indeterminate prison terms of 2 to 6 years and 1 to 3 years for promoting prostitution in the second and third degrees, respectively, and concurrent one-year jail *566 sentences on the two misdemeanor counts of conviction. The court has been advised by the Board that defendant is presently eligible to be released from incarceration on April 28, 2004.
This court has considered the position and arguments of defense counsel and the People at the hearing, as well as defendant’s statement, along with the following documents in making its level of notification and duration of registration determinations: (1) the probation report; (2) the Board’s recommendation, including the risk assessment instrument; (3) the Board’s case summaries (Mar. 8, 15, 2004); (4) the criminal court papers, including the complaint; (5) the evidence and record of proceedings at defendant’s trial; (6) the defendant’s NYSID sheet; (7) defendant’s high school equivalency diploma (defendant’s exhibit A); (8) Albion Correctional Facility Class of 2003 Graduation Program (defendant’s exhibit B); (9) a memorandum from Albion Correctional Facility social worker A. Liao to David Delbaum, Esq., dated April 27, 2004 (defendant’s exhibit C); and (10) a letter from defendant to the court, dated April 15, 2003 (court’s exhibit 1).
II. Findings of Fact
Based upon the evidence adduced at the hearing and as set forth in the Board’s risk assessment instrument and the Risk Assessment Guidelines and Commentary relevant thereto, I make the following findings of fact.
A. Risk Factors and Level of Notification
1. Current Offense
a. Use of Violence
Although the Board recommended that no points be assessed for the use of violence under risk factor one on the risk assessment instrument, the People maintain that defendant should be assessed 10 points for the use of forcible compulsion during the commission of the instant offenses. Defendant opposes the assessment of 10 points for this risk factor.
Correction Law § 168-n (3) provides:
“If the district attorney seeks a determination that differs from the recommendation submitted by the board, at least ten days prior to the determination proceeding the district attorney shall provide to the court and the sex offender a statement setting forth the determinations sought by the district attorney together with the reasons for seeking such determinations.” (See also Correction Law § 168-d [3] *567 [requiring district attorney to serve identical statement at least 15 days prior to determination proceeding where offender being released on probation, upon payment of fine, or upon conditional or unconditional discharge].)
This provision serves to provide the offender with a meaningful opportunity to be heard. (See Correction Law § 168-n [3]; People v Davila, 299 AD2d 573 [3d Dept 2002]; People v MacNeil, 283 AD2d 835 [3d Dept 2001]; People v Neish, 281 AD2d 817 [3d Dept 2001]; see Mathews v Eldridge, 424 US 319, 348-349 [1976].) In order to avoid the resulting denial of due process to the offender in the absence of compliance with this notice requirement, the People’s failure to serve a timely statutory notice of the determinations they seek has been held to constitute a waiver of their right to advance them at the hearing. (Id.)[3]
Here, the People failed to give any statutory notice prior to the hearing that they intended to argue for a risk assessment determination which differed from the Board’s recommendation.[4] Indeed, the absence of any advance notice here, much less the 10 days’ notice statutorily required, deprived defendant of the opportunity for a meaningful response. In addition, there was no evidence at the hearing that defendant knowingly and intelligently waived her right to receive such notice. Accordingly, the People have waived their right to be heard regarding defendant’s risk assessment.[5]
Even if I were to excuse the People’s lack of compliance with the statutory notice provision of Correction Law § 168-n (3), however, I would reject their argument that defendant *568 should be assessed 10 points for the use of violence during the commission of her crimes.
The Guidelines use terms that are defined in the Penal Law to avoid ambiguity. Forcible compulsion, as defined in Penal Law § 130.00 (8), means:
“to compel by either
“(a) the use of physical force; or
“(b) a threat, express or implied, which places a person in fear of immediate death or physical injury to himself, herself or another person, or in fear that he, she or another person will immediately be kidnapped.”
When interpreting this provision, the Guidelines rely upon a holding of the Court of Appeals and observe that:
“ £[T]he point... is not what the defendants would have done, but rather what the victim observing their conduct, feared they . . . might do if she did not comply with their demands.’ People v. Coleman, 42 N.Y.2d 500, 505 (1977). Discrepancies in age, size, or strength are relevant factors in determining whether there was such compulsion. E.g., People v. Yeaden, 156 A.D.2d 208 (1st Dept., 1989) (forcible compulsion shown ‘by evidence of defendant’s dominating his smaller and weaker daughter and preventing her from leaving him’). The victim’s age, by itself, however, is not a sufficient basis for a finding of forcible compulsion.” (Guidelines at 7-8 [1997].)
Here, the People contend that defendant used forcible compulsion against the victim when she warned her that force would be used against her if she did not obey her and their pimp. The People also argue that defendant helped instill fear in the victim when their pimp slapped the victim for not following instructions. The People further maintain that defendant intimidated the victim when she had the victim watch her and their pimp drag another prostitute into a house.
The People have not established by clear and convincing evidence that defendant used physical force against the victim or engaged in conduct which placed the victim in fear of immediate death or physical injury to herself or in fear that she would immediately be kidnapped. Although defendant may have employed a certain level of psychological coercion against the victim, such coercion was not accompanied by the victim’s fear of “immediate” harm contemplated by the statute. Accordingly, *569 were I to rule on the merits on the People’s requested assessment as to the use of violence risk factor, I would find there to be insufficient evidence to conclude that defendant acted with forcible compulsion justifying the assessment of 10 points for risk factor one, the use of violence against the victim.
b. Sexual Contact with Victim
The Board recommended the assessment of 25 points for defendant’s sexual contact with the victim, risk factor two. The People adopt the Board’s recommendation and contend that defendant shared the intent of the victim’s customers and her pimp to have sexual contact with her. Defendant opposes this assessment, arguing that defendant had no sexual contact with the victim and that there is insufficient evidence to establish that she shared the intent to do so with any individual who did have sexual contact with the victim.
The relevant sexual contact with the victim required by risk factor two is sexual intercourse (Penal Law § 130.00 [1]), oral sexual conduct (Penal Law § 130.00 [2] [a]), anal sexual conduct (Penal Law § 130.00 [2] [b])[6] or aggravated sexual abuse (Penal Law §§ 130.67, 130.70). The evidence at trial, however, established that defendant had no sexual contact of any sort with the victim. Accordingly, defendant may be assessed points for this risk factor only if, upon the application of “traditional principles of accessorial liability” (see Guidelines at 6), she is criminally liable for these crimes which were committed by others.
The traditional view of accomplice credibility under the Penal Law states: “When one person engages in conduct which constitutes an offense, another person is criminally liable for such conduct when, acting with the mental culpability required for the commission thereof, [s]he solicits, requests, commands, importunes, or intentionally aids such person to engage in such conduct.” (Penal Law § 20.00.) The question, then, is whether defendant is criminally liable for the conduct of the victim’s customers and her pimp, who committed the requisite sexual contact with the victim.
In this case, as demonstrated by her conviction for promoting prostitution, defendant acted with the requisite intent to promote the victim into prostitution through various means, *570 including bringing the victim to her customers, instructing the victim to provide certain sexual services for the appropriate fee, bringing the victim to be photographed for advertising purposes, and decorating a room with Barbie dolls in which the victim could service her customers. There is, however, no evidence that defendant assisted the customers in obtaining the services of the victim or shared their intent when they committed the sexual activity necessary to support the assessment of 25 points for risk factor two.[7] In addition, there is no evidence that defendant shared her pimp’s intent when he engaged in sexual intercourse with the victim.
Examined another way, the issue of whether defendant shared the intent of the victim or her customers is analogous to the more common question of whether an individual acts as an agent of the buyer or the seller in a narcotics transaction. “ ‘One who acts solely as the agent of the buyer cannot be convicted of the crime of selling narcotics.’ ” (People v Lam Lek Chong, 45 NY2d 64, 73 [1978], quoting People v Branch, 13 AD2d 714, 714 [4th Dept 1961].) Thus, if defendant had worked, not for a pimp, but for a drug kingpin, and recruited a child to help with narcotics sales, and in the course of so doing defendant picked the child up in an automobile, drove the child to the customer, instructed her about what she should do, how she should obtain the money up front and then give the customer what he was looking for, we would say that defendant acted in concert with the drug seller and was not an agent of the buyer. The same conclusion must be reached in the instant case.
The People’s reliance upon People v Merfert (87 Misc 2d 803 [Dutchess County Ct 1976]) is misplaced. In Merfert, the defendant, a female, acted jointly with two males to rape a woman. The statute in effect at the time, Penal Law former § 130.35 (1), provided that only a male could commit the crime of rape in the first degree, although a female could be an accessory to rape (see Penal Law § 20.05 [3]). The court held that, even though the defendant could not have personally committed the rape under the statute, there was sufficient evidence to establish her accessorial liability for the crime before the grand jury, based upon her actions and her shared intent with the males who *571 committed the rape. In the instant case, however, there is insufficient evidence to establish that defendant shared the intent of the victim’s customers to commit their crimes against the victim so as to be their accomplice.
Accordingly, I find that there is insufficient evidence to establish that defendant was an accomplice to the victim’s customers or her pimp and their commission of the sexual activity with the victim. Risk factor two is therefore assessed zero points.
c. Duration of Offense Conduct with Victim
The Board recommends the assessment of 20 points for a continuing course of sexual misconduct with the victim, risk factor four. The People adopt this recommendation. Defendant opposes the assessment, arguing that there is insufficient evidence to establish that defendant engaged in any sexual misconduct with the victim.
The Guidelines define a continuing course of sexual misconduct as “either (i) two or more acts of sexual contact, at least one of which is an act of sexual intercourse, [oral sexual conduct, anal sexual conduct], or aggravated sexual abuse, which acts are separated in time by at least 24 hours, or (ii) three or more acts of sexual contact over a period of at least two weeks.” (See Guidelines at 10.) As defendant engaged in no sexual contact with the victim, and, as discussed above (see discussion, supra at 568-570), there is insufficient evidence to establish that defendant was an accomplice to the victim’s customers in their commission of the requisite sexual misconduct, I find there is insufficient evidence to conclude that defendant engaged in a continuing course of sexual misconduct as defined by the Guidelines. Accordingly, risk factor four is assessed zero points.
d. Age of Victim
As the victim in this case, a 13-year-old girl, was between 11 and 16 years of age when defendant’s crimes were committed, I agree with the recommendation of the Board, to which neither party objects, to impose 20 points for risk factor five on the risk assessment instrument. Accordingly, 20 points are assessed for risk factor five.
e. Relationship with Victim
I also agree with the Board’s recommendation, to which neither party objects, to impose 20 points for risk factor seven, as the victim was a stranger to defendant at the time of the commission of the instant offenses, and defendant established a relationship with her for the purpose of victimization. Risk factor seven, therefore, is assessed 20 points.
*572 f. Other Risk Factors
I agree with the Board’s recommendation that no points should be assessed under any other risk factor for the current offense.
2. Criminal History
Although defendant has not been previously convicted of a felony, her criminal record contains eight prostitution-related misdemeanor convictions. Accordingly, I agree with the Board’s recommendation to impose five points to risk factor nine, as defendant has a prior criminal record, but no convictions for felonies or sex crimes as defined by the statute. Risk factor nine, therefore, is assessed five points.
3. Defendant’s Classification
Accordingly, defendant is assessed a total of 45 points for risk factors on the risk assessment instrument, with a corresponding classification as a Level 1 sex offender.
4. Overrides or Departures
The Board recommends no overrides or departures from the presumptive risk level it recommends for defendant, Level 2. In contrast, the People initially sought an upward departure from the Board’s recommendation of Level 2 to Level 3 based upon their contention that defendant has expressed no remorse for her crimes, but they later withdrew the application after conceding that defendant has shown remorse.[8] Defendant contends that a downward departure is warranted from Level 2 as recommended by the Board to Level 1, contending that Level 2 overstates the danger defendant poses to the community.
A court may upwardly or downwardly depart from an offender’s presumptive risk level if it finds that, on the record before it, there exists an aggravating or mitigating factor of a kind or to a degree not otherwise adequately taken into account by the Guidelines. (See Guidelines at 4.) More specifically, if an offender is an accessory to sexual contact with a victim and is assessed points on this basis, a court “may choose to depart from the risk level so calculated if it determines that this point score results in an over-assessment of the offender’s risk to public safety.” (See Guidelines at 7.) Accordingly, even if this *573 court were to agree with the recommendation of the Board and the People that defendant be denominated a Level 2 sex offender based, in part, on accessorial sexual contact with the victim, the court would nevertheless consider whether or not such an assessment overstates defendant’s risk to public safety.
In fact, there are several reasons to believe that denominating defendant a Level 2 sex offender overstates the danger she presents to the community. Defendant has shown an extraordinary determination to leave her life as a prostitute. Her efforts to leave prostitution began while she was at liberty prior to trial, when she ended her relationship with her pimp. She consistently returned to court as required during her trial, despite her pimp’s urging that she abscond.
While incarcerated, she demonstrated her intellectual capacity by obtaining her GED, achieving the notable distinction of being named salutatorian for her class, and completed four college level courses. Defendant also gained valuable employment skills while incarcerated, successfully completing an electrician’s helper program involving six electrical trades courses, and has been interviewing for electrician trade employment. She successfully participated in a sexual offender treatment program while incarcerated, becoming the “moral leader” of the group. Significantly, defendant is the first sexual offender inmate housed at the Albion Correctional Facility to receive merit time, a six-month shortening of her sentence due to her excellent disciplinary and work record while incarcerated.
The comments of defendant’s social worker, Ms. Liao, about defendant’s participation in sex offender programming at Albion Correctional Facility are most revealing. (See defendant’s exhibit C.) Ms. Liao indicates that defendant fully participated in the program, absent only two hours to conduct a telephone interview with a prospective electrical trades employer and the last three days of the program to attend her SORA hearing. Defendant was the only inmate in her group of nine offenders to fully disclose the extent of her offense by the end of the second month of the program. Defendant’s active participation in the group motivated the other offenders to follow suit and helped cement the group’s cohesiveness and trust. Ms. Liao reports that defendant fully embraced the program’s mandates, rather than simply “fake it to make it,” and she believes that defendant has come to understand how her former lifestyle required her to relinquish her autonomy. Ms. Liao is convinced that defendant is determined to live her life as a contributing and effective member of society once she is released from prison.
*574 Defendant has also sincerely expressed her remorse for her crimes, especially as to the victim’s age, both to the Board and to this court. Her correspondence to the court (court’s exhibit 1) expresses a deep desire to leave the effective slavery which consumed her as a prostitute. Although defendant’s crimes are very serious and cannot be excused, the court is mindful that defendant’s only lifestyle since she was 18 years old has been as a prostitute. The court is convinced that defendant will make every effort to insure that she does not return to her former life of prostitution.
In sum, this court believes that if ever there was a case for a downward departure, this case is it. The court is most favorably impressed with defendant’s accomplishments. She has made the most valuable use of her time while incarcerated and has much to show for it. The court finds sufficient evidence in the record to conclude that defendant has no interest in returning to a life of prostitution, and that it is unlikely that she will repeat the kind of offense for which she was convicted.
Accordingly, even if the court were to agree with the Board’s recommendation that defendant should be categorized as a Level 2 sex offender, there exist on this record mitigating factors of a kind and to a degree which have not otherwise been adequately taken into account by the Guidelines. Moreover, there is sufficient evidence establishing that a Level 2 denomination overstates defendant’s risk to public safety. This court would, therefore, grant defendant’s application for a downward departure to Level 1.
B. Duration of Registration
Defendant was not convicted of any crime that would qualify her for designation as a sexual predator (Correction Law § 168-a [7] [a]), sexually violent offender (Correction Law § 168-a [7] [b]) or predicate sex offender (Correction Law § 168-a [7] [c]).
III. Conclusions of Law
This court finds that clear and convincing evidence demonstrates that defendant should be assessed a total risk factor score of 45 and, accordingly, that defendant should be denominated a Level 1 sex offender. Even if this court had accepted the recommendation of the Board to categorize defendant as a Level 2 sex offender, moreover, the court would grant defendant a downward departure to Level 1. This court further finds that defendant is not a sexual predator, sexually violent offender, or predicate sex offender which would require lifetime registration.

. Sex offenders are denominated by Level 1, 2 or 3, with increasing community notification for higher risk levels. Only local law enforcement agencies are notified of a Level 1 offender’s location in the community. Local law enforcement agencies may distribute to any entities having vulnerable populations a picture of a Level 2 offender, along with the offender’s address and other information. Level 3 offenders are subject to the same community notifications as are Level 2 offenders, and they are also included in publically accessible databases. (See Correction Law § 1684 [6].) In addition, the duration of registration for Levels 1 and 2 sex offenders is for 10 years from the initial date of registration, while Level 3 offenders register for life unless relieved of this obligation by the court. (Correction Law §§ 168-h, 168-0.)

. The jury acquitted defendant of a second count of promoting prostitution in the third degree (Penal Law § 230.25 [1]), which was premised upon an allegation that defendant worked in concert with her pimp to manage a prostitution business involving two or more prostitutes. In addition, this court entered a trial order of dismissal (CPL 290.10) with respect to a second count of criminal solicitation in the fourth degree, finding the evidence to be legally insufficient to establish that defendant “with intent that another person engage in conduct constituting a felony, solicit[ed], requested], commanded], importunad], and otherwise attempted] to cause such other person to engage in such conduct.” (See Penal Law § 100.05 [1].)

. The defendant’s failure to object to the People’s noncompliance with the statutory notice provision does not automatically excuse such failure, as any waiver by defendant of such right must be both knowing and intelligent. (People v Davila, supra; People v MacNeil, supra; People v Neish, supra.)

. The People received notice of the SORA hearing from the correspondence unit of the court on approximately two weeks’ notice, less than the statutorily required notice of 30 days. (Correction Law § 168-n [3].) Nevertheless, the People gave defendant no advance notice of their determination recommendations which differed from those of the Board.

. The People claim that they are required to provide statutory notice only if their recommendations for defendant’s level of notification and duration of registration differ from that of the Board’s. Although this may have been the case prior to SORA’s amendment in 2002 which replaced “level of notification and duration of registration” (Correction Law § 168-n [former (3)]) with the more general “determination” (see L 2002, ch 11, § 21), the plain language of the statute now requires notice if the People’s recommendation on any determination differs from that of the Board, including the determination of any particular risk factor.

. The court recommends to the Board that it correct its risk assessment instrument by replacing the antiquated term “deviate sexual intercourse” with the terms presently utilized in the Penal Law, “oral sexual conduct” and “anal sexual conduct.” (See L 2003, ch 264, § 12.) The correct terms are substituted where necessary in the remainder of this opinion.

. In fact, this court’s entry of a trial order of dismissal as to a second count of criminal solicitation in the fourth degree (Penal Law § 100.05 [1]) was a finding on the merits that the People failed to establish at trial that defendant shared the intent of the victim’s customers to engage in the sexual contact they committed against the victim.

. The People also first disagreed with the Board and recommended to the court that defendant be assessed 10 points under risk factor 12 for her failure to accept responsibility for her offense, but later withdrew their recommendation and conceded that defendant had accepted responsibility and expressed remorse.